D.H. GINSBURG, Circuit Judge:
The liquidation of Auto-Train Corp. (Auto-Train) requires this court once again to address the question of whether a pre-bankruptcy payment by Auto-Train was a voidable preference or, alternatively, was from a trust. See In re Auto-Train Corp., Inc., 810 F.2d 270 (D.C.Cir.1987). The payment here concerns amounts of withheld employee income taxes, paid to the District of Columbia (District) within the 90-day period prior to Auto-Train’s filing of a Chapter 11 reorganization petition. The bankruptcy court, summarily affirmed by the district court, held that the payment was a preference, voidable at the instance of the trustee, Murray Drabkin (Trustee), under 11 U.S.C. § 547(b) (1982).[1] In so holding, the bankruptcy court rejected the District’s contention that, as a result of D.C.Code Ann. § 47-1812.8(f)(l) (1980), Auto-Train retained the withholding payments in trust for the District, and that therefore the payments were not “estate” property to which the preference and priority rules apply. See 11 U.S.C. §§ 541, 547(b).
This appeal presents a single question of statutory interpretation, on which the lower courts are divided: whether Congress, in enacting the Bankruptcy Code in 1978, intended the mere fact of payment of funds covered by a statutory trust to be sufficient to exclude the funds from the property of the estate that is subject to distribution. In affirming the district court order, we hold that in such circumstances the fact of payment, without more, does not create a trust for purposes of the Code.
I.
The parties do not dispute the facts as found by the bankruptcy court:
(a) On May 2, 1980, [Auto-Train] issued its check to the District in the amount of $6,606.29 to pay [Auto-Train’s] obligations to the District for income tax withholdings for the quarter ended March 31, 1980. This check was dishonored for insufficient funds and was returned to the District unpaid.
(b) In August 1980, [Auto-Train] received a Notice of D.C. Tax Due from the District assessing [Auto-Train] $6,611.29 for unpaid taxes for the quarter ended March 31, 1980, plus a late payment charge of $1,322.26, interest in the amount of $264.45, and a defective check charge (for the “bounced” check) in the amount of $5.00, for a total due of $8,203.00.
(c) In response to the Notice of D.C. Tax Due, [Auto-Train] paid the District the amount demanded in the Notice, $8,203.00, by a cashier’s check dated August 27, 1980.
Murray Drabkin, Trustee v. District of Columbia (In re Auto-Train Corp.), No. 82-0380, slip op. at 4-5 (Bankr.D.C. September 17, 1984). Concerning the payment, the bankruptcy court made the following findings, which are also undisputed:
[Auto-Train] did not in fact segregate from its general funds any funds which represented or were derived from any withholdings from employees for District of Columbia income taxes during the period from November 1976 through and including September 8, 1980, the date [Auto-Train] filed its petition in bankruptcy. Nor did [Auto-Train] establish *1104 or maintain during the same period any special tax or other trust bank accounts into which [Auto-Train] deposited any funds which represented or were derived from withholdings from employees for District of Columbia income taxes. Furthermore, the cashier’s check used to pay the District was purchased by [Auto-Train] with a check drawn on an operating account whose sole source of deposits was receipts from the operation of [Auto-Train’s] Virginia terminal. Moreover, no employee payroll checks were ever written from this account, and the account was not designated or used as a tax account.
Id., slip op. at 5-6.
On September 8, 1980, well within ninety days of the August 27th withholding tax payment, Auto-Train filed a reorganization petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. After converting the case to a liquidation under Chapter 7, id. § 701 et seq., the bankruptcy court on May 29, 1981, authorized the Trustee to liquidate Auto-Train and to distribute its assets. On September 10, 1982, the Trustee filed a complaint against the District seeking to recover, as a voidable preference, Auto-Train’s August 27th payment to the District. The Trustee and the District filed cross-motions for summary judgment on the preference issue. On September 17, 1984, the bankruptcy court, holding that the payment was a voidable preference, granted summary judgment on behalf of the Trustee and ordered the District to return the payment, with interest. On March 31, 1986, the district court summarily affirmed the bankruptcy court judgment. This appeal followed.
II.
Under the 1978 Bankruptcy Code, liquidated assets comprising the debtor’s estate are distributed among unsecured creditors according to the priority scheme established in 11 U.S.C. § 507.[2] Creditors assigned a higher priority recover their claims in full before a lower-priority creditor recovers anything. The “estate” from which distribution is made consists of “all legal or equitable interests of the debtor in property as of the commencement of the case,” as well as “[a]ny interest in property that the estate acquires after the commencement of the case.” 11 U.S.C. § 541(a)(1), (7). Under 11 U.S.C. § 547(b)-(c), as then in effect, the trustee may “avoid,” as “preferential,” payments of estate property that were
(1) “for or on account of an antecedent debt owed by the debtor before such transfer was made”;[3]
(2) made by the debtor “on or within 90 days before the date of the filing of the petition”;[4]
(3) made, or were for a debt incurred, outside the ordinary course of business,[5] or were made “later than 45 days after such debt was incurred”;[6] and
(4) enabled the creditor to receive more than the creditor would have received under the priority rules.[7]
A voidable preference can be found only insofar as payment is made from “property of the debtor,” 11 U.S.C. § 547(b), which does not include assets held by the debtor in trust for another. Id. § 541(b).[8]
According to the parties, we must decide only whether Auto-Train’s August 27th payment to the District was of funds held *1105 in trust for purposes of section 541.[9] If not, then the payment, they agree, constituted a voidable preference under section 547.[10] The District has argued, both here and below, that a section 541 trust in the withheld employee income taxes was created by D.C.Code Ann. § 47-1812.8(f)(l) (1980), which provides that “... [a]ny sum or sums withheld in accordance with the provisions of this section shall be deemed to be, and shall be, held in trust by the employer for the District.” As seen in Part VI of this opinion, infra, other questions must be resolved before we reach this one.
III.
In rejecting the District’s arguments, the bankruptcy court relied primarily on United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), and case law interpreting it. Randall involved a somewhat different situation from the one before us insofar as it was a pre-Code case in which the Internal Revenue Service (IRS) sought to recover from the debtor, after the commencement of the case, withholding taxes that had accrued after the commencement of the case. (In contrast, the Trustee here seeks to recover back funds that Auto-Train paid to the District prior to the commencement of the case.) Under the Bankruptcy Act, which was then in effect, administrative costs and expenses enjoyed a priority over withheld taxes (as they continue to do so under the 1978 Code). Due to the amount of administrative costs incurred, the IRS could recover the withheld taxes only if it showed that they were held in trust by the debtor for the IRS, thereby excluding them from the “estate” and thus from the Act’s priority scheme. Like the District in this case, however, the IRS in Randall could not connect the funds withheld by the debtor to a trust account established for the benefit of the taxing authority. In Randall:
[The debtor] was kept in possession of its business by court order_ The order required it to open three separate bank accounts for its general, payroll, and tax indebtedness and to make appropriate disbursements from those accounts ....
The debtor did not comply with those requirements. Although it withheld income and social security taxes from the wages of its employees, it did not deposit them in the special tax account and did not pay them, as required, to the United States.
Id. at 514, 91 S.Ct. at 993.
Unable to show that anything resembling a trust existed in fact, the IRS argued that 26 U.S.C. § 7501(a), which essentially mirrors the provision on which the District here relies, imposed a trust by operation of law:
Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.
The Supreme Court rejected the IRS’ argument, stating that “the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created those assets.” Id. at 517, 91 S.Ct. at 994. Lower courts subsequently interpreted Randall to preclude the recognition of trusts when, due to commingling, the funds allegedly withheld for payment could not be traced to the debtor *1106 assets claimed by the trustee.[11] The Ninth Circuit went even further, refusing to recognize trusts even when such tracing was possible.[12]
In the case before us, Auto-Train’s August 27th payment to the District was made with a cashier’s check that it purchased with funds drawn from an account unrelated to employee wages or income withholding. Therefore, relying primarily on cases that denied trusts when commingling prevented tracing, the bankruptcy court held that the August 27th payment was not traceable to a section 541 trust held by Auto-Train on behalf of the District. In so holding, the court rejected the District’s argument that — as the court phrased it — “[Auto-Train’s] purchase of a cashier’s check in and of itself constituted a segregation of funds sufficient to establish a trust fund,” [13] an argument that, if embraced, would at least preclude a trustee in bankruptcy from ever recovering, as a voidable preference, any pre-petition tax payments to a jurisdiction with a statutory trust provision.[14]
IV.
On appeal, the District reiterates its argument rejected below, but it does not contend that the bankruptcy court misinterpreted Randall or the cases interpreting it. Instead, as both the District and the Trustee acknowledge, Congress in enacting the 1978 Bankruptcy Code relaxed the tracing requirement as previously applied by courts interpreting Randall, in order to ease the burden of showing that a trust has been created. The District and the Trustee dispute, however, and we must determine, the precise extent to which Congress relaxed that requirement. The parties do not rely on the Code itself, which simply does not address the issue of tracing. Instead, like the courts that have considered the matter, each relies on the legislative history of the Code, in which the Congress specifically addressed Randall and the question of how pre-petition tax payments should be treated. In particular, each party couches its argument in terms of how the Code differs from the original House and Senate bills, as well as on specific language found in the commentary concerning each successive draft of the legislation. Because of its complexity, and its centrality to this case, we review the legislative history at some length before turning to the prior court decisions and the arguments of the District and the Trustee.
Sections 541 and 547 of the Code reflect a compromise between the Senate and House bills. Section 541(a)(1) of the House bill (H.R. 8200) which passed first, defined estate property as “all legal or equitable interests of the debtor in property as of the commencement of the case,” which under section 541(a)(3) included “any interest in property that the trustee recovers” as a voidable preference. Section 547(b)(2) of the bill provided a general rule making voidable any transfer “for or on account of an antecedent debt owed by the debtor before such transfer was made.” Section 547(c) stated an exception for debts both *1107 incurred and, within 45 days thereafter, paid in the ordinary course of business.[15]
Thus, the House bill afforded no special treatment to either withheld taxes or to pre-petition tax payments, but as the accompanying House Report[16] indicated, these general provisions would have nonetheless protected the interests of taxing authorities. First, as to what constitutes the debtor’s “estate” under section 541, the Report recognized that “[situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another,” and that “[t]his section ... will not affect various statutory provisions ... that create[ ] a trust fund for the benefit of a creditor of the debtor.” [17] Consequently, withheld taxes “held in trust” by a debtor would not be treated as estate property, and therefore would not come under the Code’s rules governing preferences and priorities.[18]
Second, the Report’s commentary on the section 547 preference rules indicated that some pre-petition payments of withheld taxes would not be recoverable by the trustee as voidable preferences:

§ 5J¡.7. Preferences

[[Image here]]
Subsection (b) is the operative provision of the section. It authorizes the trustee to avoid a transfer if five conditions are met. These are the five elements of a preference action_ Second, the transfer must be for or on account of an antecedent debt owed by the debtor before the transfer was made.
[[Image here]]
This provision will not apply to permit the trustee to recover estimated tax payments by a debtor, because no tax is due when the payments are made.
Therefore, the tax on account of which the payment is made is not an antecedent debt. A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments.
Subsection (e) contains exceptions to the trustee’s avoiding power....
The second exception protects ordinary course of business ... transfers_
In the tax context, this exception will mean that a payment of taxes when they are due, either originally or under an extension, or within 45 days thereafter, will not constitute a voidable preference. However, if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference, if the other elements of a preference are present. In that case, the tax debt would be an antecedent debt and would not fall under this exception. However, the trustee would be able to recover only if the taxing authority did not have sovereign immunity or had waived it under proposed 11 U.S.C. 106.[19]
*1108 The House bill was then sent to the Senate, which had been drafting its own legislation.[20] Instead of simply amending H.R. 8200 to conform to that legislation, the Senate passed its own bill (S. 2266) and substituted it for the House version. Unlike the House, the Senate specifically protected taxing authorities. Section 541(b)(3) of the Senate bill would have excluded from the debtor’s estate any “taxes withheld or collected from others pursuant to Federal, State, or local law before the commencement of the case and required to be paid to a governmental unit.” Furthermore, in section 547(b)(2), the Senate totally exempted from the preference rules any pre-petition tax payments by the debtor: “the trustee may avoid any transfer of property of the debtor ... for or on account of an antecedent debt, other than a debt for which payment is required under the revenue laws of a governmental unit, owed by the debtor before such transfer was made.”
Because the Senate bill incorporated many of the same provisions found in the House bill, the Senate Report[21] largely tracks that of the House, departing only on occasion. The Senate Report’s commentary on section 541 and estate property is virtually identical to that in the House Report,[22] and includes the latter’s statement that “[t]his section ... will not affect various statutory provisions ... that create[ ] a trust fund for the benefit of a creditor of the debtor.”[23] Concerning the preference rules under section 547, however, substantial differences exist. The paragraph in the House Report relating to estimated tax payments and withheld taxes was deleted, and in its place was inserted the comment that “[s]ubsection (b)(2) of this section in effect exempts from the preference rules payments by the debtor of tax liabilities, regardless of their priority status.”[24] The paragraph found later in the House Report that discusses the application of the subsection (c) “ordinary course of business” exception to the tax context was also deleted, with no substitution made.[25]
Senate and House floor managers then agreed upon compromise amendments to the Senate bill. In relevant part, the managers adopted the House versions of sections 541 and 547, rejecting the alternative language in the Senate bill. The managers also added section 547(a)(4), which stated that “a debt for a tax is incurred on the day when such tax is last payable, including any extension, without penalty.” A joint explanatory statement of the compromise bill, given by Senator DeConcini and Representative Edwards respectively on the Senate and House floors, provides in relevant part:
Section 541. Property of the estate: The Senate amendment [S. 2266] provided that property of the estate does not include amounts held by the debtor as trustee and any taxes withheld or collected from others before the commencement of the case. The House amendment [i.e., the floor managers’ compromise legislation] removes these two provisions. As to property held by the debt- or as a trustee, the House amendment provides that property of the estate will include whatever interest the debtor held in the property at the commencement of the case. Thus, where the debtor held only legal title to the property and the beneficial interest in that property belongs to another, such as exists in the case of property held in trust, the proper *1109 ty of the estate includes the legal title, but not the beneficial interest in the property.
As to withheld taxes, the House amendment deletes the rule in the Senate bill as unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee. Under the Internal Revenue Code of 1954 (section 7501), the amounts of withheld taxes are held to be a special fund in trust for the United States. Where the Internal Revenue Service can demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, then if a trust is created, those amounts are not property of the estate. Compare In re Shakesteers Coffee Shops [England v. United States], 546 F.2d 821 (9th Cir.1976) with Glynn Wholesale Building Materials Inc. (S.D.Ga.1978) and In re Progress Tech Colleges, Inc., 42 AFTR 2d 78-5573 (S.D.Ohio 1977).
Where it is not possible for the Internal Revenue Service to demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, present law generally includes amounts of withheld taxes as property of the estate. See, e.g., United States v. Randall ... and In re Tamasha Town and Country Club, 483 F.2d 1377 (9th Cir.1973). Nonetheless, a serious problem exists where “trust fund taxes” withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case. For example, where the debtor had commingled that amount of withheld taxes in his general checking account, it might be reasonable to assume that any remaining amounts in that account on the commencement of the case are the withheld taxes. In addition, Congress may consider future amendments to the Internal Revenue Code making clear that amounts of withheld taxes are held by the debtor in a trust relationship and, consequently, that such amounts are not property of the estate.
[[Image here]]
Section 547. Preferences: The House amendment deletes from the category of transfers on account of antecedent debts which may be avoided under the preference rules, section 547(b)(2), the exception in the Senate amendment for taxes owed to governmental authorities. However, for purposes of the “ordinary course” exception in the preference rules contained in section 547(c), the House amendment specifies that the 45-day period referred to in section 547(c)(2)(B) is to begin running, in the case of taxes from the last due date, including extensions, of the return with respect to which the tax payment was made.[26]
*1110 The House adopted the compromise bill and sent it to the Senate, which amended it in respects not relevant here. The amended bill thereafter returned to the House for final approval.
V.
Although nearly a decade has passed since the Code was enacted in 1978, only six courts have addressed the pre-petition tax payment situation before us.[27] Three of them did not address whether Randall had been limited by the Code, however.[28] Of those three courts that both analyzed the Code’s legislative history and reached the question of whether the mere fact of pre-petition tax payment, in conjunction with a statutory trust provision, is sufficient to create a trust under section 541, two have adopted the District’s position, In re Rodriguez, 50 B.R. 576 (Bankr.E.D.N.Y.1985); In re Razorback Ready-Mix Concrete Co., 45 B.R. 917 (Bankr.E.D.Ark.1984), while one has rejected it. In re Olympic Foundry Co., 63 B.R. 324 (Bankr.W.D.Wash.1986), rev’d on other grounds, 71 B.R. 216 (Bankr. 9th Cir.1987). Because the debate between the District and the Trustee mirrors that between Rodriguez-Razorback and Olympic Foundry, an analysis of those cases fully captures the dispute as the parties have framed it.
The court in Razorback first distinguished Randall and In re Rohar[29] as post-petition efforts by the government to reach monies withheld before the bankruptcy filing. The court then, in holding that the mere fact of pre-petition payment of taxes under a statutory trust provision created a trust on behalf of the government, *1111 relied heavily on the House Report’s commentary on section 547:
[T]he intent of Congress in enacting Section 547 of the Bankruptcy Code, as reflected in the legislative history accompanying that section, was that a “payment of withholding taxes constitutes a payment of money held in trust ... and thus will not be a preference.” The legislative report adds the proviso that this is true “if [the taxes] have been properly held for payment,” but considers the proviso as having been complied with “if the debtor is able to make the payments.” [quoting H.R.Rep. No. 95-595, at 373] Thus, although Congress recognized the need under 26 U.S.C. Section 7501(a) of having a specific fund upon which to impress a trust, it also recognized that in situations like the one presented here if the debtor was able to make the payments, designated the payments as “taxes due” and delivered the payments to the government, the monies could be labeled trust funds and the debtor’s duty as trustee was accomplished.
45 B.R. at 922 (emphasis in original). Citing Razorback as support, the court in Rodriguez reached a similar conclusion. As in Razorback, the Rodriguez court quoted the House Report (emphasizing the phrase — “as they will have been if the debtor is able to make the payments”) and distinguished Randall as involving a post-petition attempt to reach assets still held by the debtor.[30] Rodriguez, 50 B.R. at 580-81.
In holding that the mere fact of pre-petition payment does not create a section 541 trust, Olympic Foundry emphasized different passages from the legislative history, and it explicitly rejected the Razorback and Rodriguez cases.[31] Concerning the House Report, Olympic Foundry relied on the phrase immediately preceding the one stressed by the other two courts, viz. “if they have been properly held for payment.” Olympic Foundry, 63 B.R. at 328. It therefore reached the opposite conclusion from those earlier decisions:
With all due respect, the reasoning of Razorback and Rodriguez is based on the faulty premise that a nonexistent or dissipated trust can be created or reconstituted without the transfer into that trust of some other property. To say that the act of identifying or transferring nontrust funds for payment of taxes somehow creates or reconstitutes the trust is only a semantic exercise since the transfer of other property, assuming that it is property of the debtor, would itself be a preference.
[[Image here]]
If the thesis of Razorback is correct, the payment of dissipated or untraceable trust funds, of any kind, would never be subject to preference avoidance. Any pre-bankruptcy payment by the debtor, of claims supposed to have been provided for with trust funds, would be held to have been paid with trust funds without regard to the source of the payment. Nothing in Section 541 or Section 547 gives any warrant for so sweeping an exemption. The policy of Congress in terms of the legislative history does not come close to painting with so broad a brush.
Id. at 329.
Although, the court in Olympic Foundry reached a result contrary to those in Razorback and Rodriguez, a fundamental consensus emerges from this disagree *1112 ment. By relying so heavily on the exact phrasing in the House Report, these three courts, despite the confidence with which they announce their conclusions, each painted a picture of an indeterminate and contradictory legislative history. From the analysis employed in these cases, whether one sides with Olympic Foundry or with Razorback and Rodriguez appears to depend largely on which of two successive phrases from the House Report one chooses to emphasize — “if they have been properly held for payment” or “as they will have been if the debtor is able to make the payments.” Embracing the former leads to the conclusion that Congress did not intend to depart significantly from Randall, requiring only that the courts use “reasonable assumptions,” while reliance on the latter leads to the conclusion that Congress meant to preclude the application of Randall to pre-petition payments. Upon consideration, however, we have concluded that the House Report is not ambiguous; as a result the Code, in light of its legislative history read as a whole rather than in snippets, offers an unequivocal resolution to the dispute before us.
VI.
In analyzing the legislative history, it is important to keep in mind that the District and the Trustee view the dispute as involving whether the August 27th payment by Auto-Train to the District was from property of the debtor’s estate or, alternatively, was from funds held in trust. If the former, then the Trustee argues the payment is recoverable as a preference; if the latter, then the District argues it is entitled to retain the payment. This question of whether the payment was of estate property or of trust funds requires a determination of the extent to which Congress, in enacting section 541 of the Code (which defines the property of the estate), intended to ease the tracing burden imposed by Randall.
Approaching the House Report from this perspective, the Trustee, like the court in Olympic Foundry, contends that the initial phrase in the House Report — “if they have been properly held for payment” — preserves a strict tracing requirement, while the District, like the courts in Razorback and Rodriguez, argues that the succeeding phrase — “as they will have been if the debtor is able to make the payments”— means that the mere act of payment creates a trust on behalf of the creditor. Our inspection of the House Report, however, indicates that neither position is correct. If the House intended this passage to provide criteria for determining when property is considered within a debtor’s estate and when it is held in trust, we would expect to find the passage in its commentary on section 541, which defines what property is included within the debtor’s estate; instead we find in the section 541 commentary only the rather unremarkable statement that “[t]his section will not affect various statutory provisions ... that create[ ] a trust fund for the benefit of a creditor of the debtor.” Nothing in this passage addresses the subject of tracing requirements even indirectly.
The parties and the courts have instead sought guidance from another passage in the Report, found not in the commentary on what is property of the estate under section 541, but rather on what qualifies as a section 547 preference and, in particular, as an antecedent debt under section 547(b). Yet, under the scheme embodied in the Code, one reaches the question of whether a payment is for an antecedent debt only after having concluded that funds were property of the estate at the time of payment. If the funds in question were trust funds, their pre-petition payment can never be a voidable preference because they are not property of the debtor’s estate.
The fact that the much contested passage arises in a discussion of the section 547 preference rules strongly suggests (1) that the House did not intend it to illuminate what constitutes a trust under section 541, and (2) that pre-petition payments of withheld taxes might qualify as voidable preferences, at least under certain circumstances. This preliminary conclusion is confirmed when we turn to the passage in the section 547(c) commentary that relates to tax payments. After discussing section *1113 547(b) and antecedent debts, the Report turns to the “ordinary course of business” exception in section 547(c), which provides that, even if a payment is for an antecedent debt, the trustee may not recover it as a voidable preference if the debt was incurred, and the payment was made, in the “ordinary course of business,” and if payment was made within 45 days of being incurred.[32] In discussing this rule, the Report states:
In the tax context, this exception will mean that a payment of taxes when they are due, either originally or under an extension, or within 45 days thereafter, will not constitute a voidable preference. However, if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference, if the other elements of a preference are present.
It is therefore clear that, contrary to the District’s contention, the House Report contemplated that at least in some circumstances pre-petition tax payment could be recoverable as a voidable preference.
At this point, we can also discern what the Report meant when it stated that “[a] payment of withholding taxes ... will not be a preference ... if [the taxes] have been properly held for payment, as they will have been if the debtor is able to make the payment.” As we have just seen, the House bill subjected at least some tax payments to the preference rules of section 547(b)-(c). Under these provisions, the Report indicates in its discussion of section 547(c), the time when a tax payment is made is crucial for determining whether the payment is voidable (as it is for payments of other types of debt). With respect to section 547(c) of the bill, the Report states that if taxes are paid within 45 days after “they are due, either originally or under an extension,” and if the other “ordinary course of business” criteria are' satisfied, the tax payments are excluded from treatment as a preference. The Report’s discussion of section 547(c) also states that tax payments are not recoverable if they are paid “when they are due, either originally or under an extension.” Although this language occurs within the Report’s commentary on section 547(c), it actually refers to the “antecedent debt” rule of section 547(b). We can readily infer this from inspecting the much contested commentary on section 547(b), in which this exact point is made explicitly with respect to estimated tax payments:
This provision will not apply to permit the trustee to recover estimated tax payments by a debtor, because no tax is due when the payments are made. Therefore, the tax on account of which the payment is made is not an antecedent debt.
This passage immediately precedes the discussion of withholding taxes at dispute here, and we conclude that they address the same situation. Consequently, a payment of withheld taxes is not for an “antecedent debt,” and is therefore not a voidable preference, if, as in the case of an estimated tax payment, the debtor makes this payment “when no tax is due” (i.e., before the penalty period begins to run).[33] As a result, the phrase — “as they will have been if the debtor is able to make the payments” — presupposes payments made before a penalty is incurred, not whenever the debtor happens to make the payment, as the District suggests.
Whereas the House Report hypothesized a situation in which “no tax is due when the payments are made,” Auto-Train’s August 27th payment was made months after the taxes had become due, as were the disputed payments in Razorback, Rodriguez, and Olympic Foundry. The House Report is therefore inapposite to the issue before us. Because the Report does not address the situation in which tax payments are past due, it offers no evidence for the District’s position (and that of the courts in Razorback and Rodriguez) that *1114 Congress intended to overrule Randall in that context. Yet, the same can also be said as regards the Trustee’s position. Rather than reaffirming Randall as to the “proper” holding of taxes withheld in trust (as the court in Olympic Foundry believed), the House Report required no tracing for tax payments that are made when “no tax is due”; in such a case, it appears that the mere fact of timely payment would suffice to preclude recovery by the trustee.[34]
Although the original House bill served as the basis for the Code provisions relevant here, its final version was crucially influenced by the Senate bill. The District directs our attention to section 541(b)(3) of that bill, which would have excluded from estate property “taxes withheld or collected from others ... before the commencement of the case required to be paid to a governmental unit.” According to the joint explanatory statement that accompanied the compromise legislation, this provision was not included in the Code because it was “unnecessary.” The District appears to construe this comment as evidence that existing law already rendered prepetition tax payments as a rule unrecoverable by the trustee. This is an erroneous reading of these comments. Instead, as the joint' statement explained, the Senate provision was “unnecessary” because, under section 541(b), “property of the estate does not include the beneficial interest in property held by the debtor as a trustee.” In other words, because withheld taxes that are indisputably held in trust fall within the general rule excluding trusts from property of the estate, as the House and Senate Reports acknowledged, it was “unnecessary” to state so specifically, which is all the Senate provision would have done.[35]
The question that we must decide is not that addressed by the Senate’s version of section 541(b)(3) — whether “withheld or collected taxes” that are concededly “held in trust” constitute property of the estate; the undisputed answer is that they do not. Rather, we must decide the antecedent question, viz., in which circumstances may we conclude that withheld taxes have been “held in trust.” (In this case, were withheld taxes “held in trust” by the mere fact of their pre-petition payment to the District?) [36] As to this question, the joint explanatory statement generally reaffirmed the tracing requirement in Randall, adding only that courts should employ “reasonable assumptions” in the aid of efforts to trace funds to a trust. Both the District and the Trustee attempt to construe the “reasonable assumption” discussion in their favor. A reading of the joint statement’s entire commentary on section 541 reveals, however, that it was directed not to a trustee’s attempt to recover pre-petition payments, but rather to a taxing authority’s post-petition attempt to recover property in the possession of a debtor.
*1115 The joint statement did address pre-petition payments when explaining section 547. That discussion bears repeating:
The House amendment [i.e., the floor managers’ compromise legislation] deletes from the category of transfers on account of antecedent debts which may be avoided under the preference rules, section 547(b)(2), the exception in the Senate amendment [S. 2266] for taxes owed to governmental authorities. However, for purposes of the “ordinary course” exception in the preference rules contained in section 547(c), the House amendment specifies that the 45-day period referred to in section 547(c)(2)(B) is to begin running, in the case of taxes from the last due date, including extensions, of the return with respect to which the tax payment was made.
The Senate provision referred to, section 547(b)(2), stated that:
the trustee may avoid any transfer of property of the debtor ... for or on account of an antecedent debt, other than a debt for which payment is required under the revenue laws of a governmental unit, owed by the debtor before such transfer was made.
One can immediately see how the Senate’s provision conflicted with the original House version. Whereas the House bill would have excluded from the category of “antecedent debt” only tax payments that are made when “no tax is due” (as the House Report indicated), the Senate bill would have excluded from the reach of the voidable preference rules all pre-petition tax payments, regardless of their timeliness (i.e., in spite of the fact that they may be for an antecedent debt). The Senate bill therefore would have achieved the result sought by the District, i.e., no recovery by the trustee of pre-petition tax payments, although by a different statutory route. Under the reasoning of the District and the Senate, whether the payments are for an antecedent debt is irrelevant; for the District, because the payments are made from trust assets, and thus not made from property of the estate; for the Senate, because the trustee’s power to avoidance is limited apparently regardless of whether the funds are trust assets.
In drafting the final version of the Code, the Senate and House floor managers rejected the Senate rule. Under the Code, tax payments are not voidable as a preference if they are made “not later than 45 days after such debt was incurred,” section 547(c)(2)(B), a tax debt being “incurred on the day when such tax is last payable, including any extension, without penalty,” section 547(a)(4). If the tax payment is made before that 45-day period expires, the trustee may not recover it, regardless of whether it is traceable to a trust account; the fact of payment is enough to preclude recovery by the trustee. If the Auto-Train tax payment had been made within 45 days after the penalty period began, then the Trustee could not recover the payment. As it is, the August 27th-payment occurred over three months after the initial penalty date.[37]
When the payment occurs after that 45-day period, as here, it qualifies as a voidable preference under section 547(b)-(c) unless the funds used are traceable to a trust and therefore are excluded from the debtor’s estate under section 541. We must therefore determine what tracing rule Congress intended courts to apply to prepetition payments occurring after the 45-day period. The most obvious alternatives would be either the strict tracing rule imposed by pre-Code cases or the “reasonable assumptions” described by the joint explanatory statement with regard to post-petition creditors claims.
We believe that the “reasonable assumptions” rule should govern. First, the 90-day preferential payment rule inherent *1116 ly reflects a general decision that debts paid within that pre-petition period are to be placed on the same footing as post-petition claims; the application of “reasonable assumptions” would therefore be called for both before and after the commencement of the case. Second, if courts did not apply “reasonable assumptions” to pre-petition payments occurring after the 45-day period, then an absurd result would occur: the taxing authority would have an undisputed right to retain payments made within the 45-day period, and in those instances when the debtor failed altogether to make the payment, the taxing authority would be entitled to rely upon “reasonable assumptions” in order to reach withheld taxes retained by the debtor; in between those time periods, however, the taxing authority (under pre-Code case law analysis[38]) would be required to trace the payment directly to the funds withheld for taxes. Under this scenario, the pre-petition payment that occurs after the 45-day period would not be a preference, but rather a disadvantage, to the taxing authority. As a result of the payment, the taxing authority would encounter greater difficulty in holding onto the funds than it would have had in wresting them away from the estate if the debt- or had simply retained them beyond the commencement of the case. We cannot believe that Congress would choose such a nonsensical result.[39]
VII.
We must therefore decide whether it is a “reasonable assumption” to “conclusively presume that the funds used for payment necessarily are endowed with trust character.” Olympic Foundry, 63 B.R. at 329. The joint explanatory statement’s sole example of a “reasonable assumption” involved commingled accounts. While this example should not be interpreted as exclusive, it certainly does not compel us to accept the District’s position. In contrast to the commingled account situation, the funds used by Auto-Train for the August 27th payment had no prior relationship whatsoever to withheld tax funds or to employee wages. Any “assumption” that would enable the District to trace the August 27th payment to the taxes withheld must therefore be considerably more far-reaching and presumably less “reasonable” than that required in order to trace a payment to funds held in a commingled account.
That the “assumption” espoused by the District is not “reasonable” but indeed heroic becomes obvious when we consider the 45-day rule. If Congress had intended the mere fact of pre-petition payment to be a “reasonable assumption” in the tax context, it could have simply enacted the Senate’s version of section 547(b)(2), because that provision would have achieved the same result of entitling a taxing authority to retain all pre-petition payments. Con *1117 gress, however, rejected the Senate proposal in favor of the 45-day rule, which the House Report clearly would result in the voiding of some pre-petition tax payments. From this we must conclude that Congress did not intend to entitle taxing authorities to retain every pre-petition payment.[40] Yet, the District’s broad “reasonable assumption” position, under which the payment is viewed as itself creating the trust, would yield that very result. Lest we contravene the clear congressional intent, we must reject the District’s position.[41]
For the reasons discussed above, the judgment is

Affirmed.

. This case pre-dates, and is not affected by, the 1984 amendments to the Bankruptcy Code. See Pub.L. 98-353, 98 Stat. 363. Citations are to the Code as it was before such amendments.

. The District’s claim was unsecured because it had not filed a tax lien against Auto-Train for the amount due.

. 11 U.S.C. § 547(b)(2).

. Id. § 547(b)(4)(A).

. Id. § 547(c)(2)(A), (C)-(D).

. Id. § 547(c)(2)(B). Congress deleted this provision in 1984, see Pub.L. 98-353, § 462(c), but it governs the disposition of this case. See note 1, supra; see also 11 U.S.C. § 547(b)(4) ("a debt for a tax is incurred on the day when such tax is last payable, including any extension, without penalty”).

. Id. § 547(b)(5)..

. Section 541(b) states that "[pjroperty of the estate does not include any power that the debt- or may only exercise solely for the benefit of any entity other than the debtor.”

. 11 U.S.C. § 547(g) places upon the trustee the burden of proof in avoiding a transfer under section 547(b).

. In that event, the District will not recover the taxes due because the Code’s priority scheme ranks taxing authorities sixth in priority, which is too low to permit any recovery in this instance. See 11 U.S.C. § 507(a)(6)(C) (1982). The 1984 amendments dropped the taxing authorities’ priority to seventh place, by inserting a priority for claims up to |2,000 by grain producers and fishermen as against storage facilities. See Pub.L. 98-353, § 350(3), 98 Stat. 374.

. See In re Kennedy & Cohen, Inc., 612 F.2d 963 (5th Cir.), cert. denied, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); Lusk Corporation v. Arizona State Tax Commission, 462 F.2d 187, 189 (9th Cir.1972). Cf. In re Rohar Associates, Inc., 375 F.Supp. 637 (S.D.N.Y.1974).

. See England v. United States (Matter of Shakesteers Coffee Shops), 546 F.2d 821 (9th Cir.1976), cert. denied, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1071 (1977); In re Tamasha Town and Country Club, 483 F.2d 1377 (9th Cir.1973).

. Slip op. at 10 (emphasis in original).

. The bankruptcy court saw an even broader implication, but we are not required to explore the point. In rejecting the District’s position, it said that:
To hold otherwise would eviscerate the preference statute, Bankruptcy Code Section 547(b), by allowing a debtor to protect a favored creditor from a preference recovery by the simple expedient of paying the creditor with a cashier’s check. Such a result would be at odds with the general purpose of the preference section and inconsistent with the narrow manner in which Congress drafted the defenses to recovery contained in Bankruptcy Code Section 547(c).
Id. at 11.

. (c) The trustee may not avoid under this section a transfer ...
(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms;

. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

. Id. at 368.

. In Randall, the Supreme Court held that a statutory provision that deems withheld taxes to be held in trust did not in itself compel the conclusion that funds sought by the IRS were "held in trust” and thus fell outside the debtor's estate. Instead, in order to impress a trust the Court required the IRS to "trace” those particular monies to a fund dedicated to payment of those taxes.

. H.R.Rep. No. 95-595, at 373, U.S.Code Cong. & Admin.News 1978, p. 6329.

. In order to resolve their differences, the House and Senate took turns amending the legislation, rather then send their separate bills to conference. See 124 Cong.Rec. 32392 (Sept. 28, 1978) (statement of Representative Edwards); 124 Cong.Rec. 33990 (Oct. 5, 1978) (statement of Senator DeConcini).

. S.Rep. No. 95-989, 95th Cong., 2d Sess. (1978).

. Id. at 82-84, U.S.Code Cong. & Admin.News 1978, pp. 5868-5870. A final paragraph discussing section 541(e) was added, but it is not relevant to this case.

. Id. at 82, U.S.Code Cong. & Admin.News 1978, p. 5868.

. Id. at 87, U.S.Code Cong. & Admin.News 1978, p. 5873.

. Id. at 88, U.S.Code Corig. & Admin.News 1978, p. 5874.

. 124 Cong.Rec. 32417 (Sept. 28, 1978) (statement of Representative Edwards); 124 Cong. Rec. 34016-17 (Oct. 5, 1978) (statement of Senator DeConcini). The joint explanatory statement also included the following passage:
Section 547(b)(2) of the House amendment [i.e., the floor managers’ compromise legislation] adopts a provision contained in the House bill and rejects an alternative contained in the Senate amendment [S. 2266] relating to the avoidance of a preferential transfer that is payment of a tax claim owing to a governmental unit. As provided, section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers.
124 Cong.Rec. 32400 (September 28, 1978) (statement of Representative Edwards); 124 Cong.Rec. 34000 (Oct. 5, 1978) (statement of Senator DeConcini). The first sentence restates in substance the comment on section 547 in the joint statement, quoted above in the text. The second sentence clarifies the voidability of preferential federal tax payments by the waiver of sovereign immunity in 11 U.S.C. § 106(c). The House Report had indicated that sovereign immunity might prevent trustees from recovering preferences in the possession of the government. See H.R.Rep. 95-595, at 373, U.S.Code Cong. & Admin.News 1978, p. 6329, quoted in text at note 19, supra. This waiver is more extensively discussed elsewhere in the legislative history. See 124 Cong.Rec. 32394 (September 28, 1978) (statement of Representative Edwards); 124 Cong.Rec. 33993 (October 5, 1978) (statement of Senator DeConcini).

.Cases seeking to discern the continuing vitality of Randall in trust situations not involving the payment of taxes covered by a statutory trust provision are not particularly instructive in this case because, as our account of the Code’s legislative history shows, Congress considered tax payments to present a unique problem. See Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962 (5th Cir.1983); In Re Commodity Exchange Services Co., 62 B.R. 868 (Bkr.N.D.Tex.1986); In Re First Fidelity Financial Services, Inc., 36 B.R. 508 (Bkr.S.D.Fla.1983); In re Nashville White Trucks, Inc., 22 B.R. 578, 586-88 (Bkr.M.D.Tenn.1982), aff’d, 731 F.2d 376 (6th Cir.1984).
In three cases where courts ventured an opinion concerning whether the mere fact of payment would by itself create a statutory trust, the statement was pure dictum. In Selby v. Ford Motor Co., 590 F.2d 642, 646 n. 6, 648-49 (6th Cir.1979), the court stated that "it appears that § 541 of the new Act intends to modify or overrule the holdings in the Randall and England cases,” id. at 648 n. 18, but the court did not decide the issue because ‘‘[i]n the instant case tracing creates no problem. The funds subject to the statutory trust were paid to the subcontractor as trust beneficiaries prior to bankruptcy.” Id. at 649 (footnote omitted). In re Casco Electrical Corp., 28 B.R. 191 (Bkr.E.D.N.Y.), aff'd, 35 B.R. 731 (E.D.N.Y.1983), involved commingled funds; thus the court’s discussion (“it is arguable that by the very act of payment, [the debtor] identified the funds as trust assets,” 28 B.R. at 195) is dictum. See also In re Fresh Approach, Inc., 51 B.R. 412, 418-24 (Bkr.N.D.Tex.1985).
Finally, two other cases that address the Code’s legislative history do not involve a situation in which the taxing authority relied solely on the fact of a pre-petition tax payment to support its claim that a trust was created. In re American International Airways, Inc., 70 B.R. 102 (Bkr.E.D.Pa.1987), the IRS successfully sought, post -petition, funds that had been deposited in segregated accounts for payment of withheld taxes, rendering tracing unproblematic. In finding a trust, the court stated that ”we do believe that [the Code], read in light of the legislative history, overrules the holding in Shakesteers and Tamasha, where the debtor did segregate the funds as directed”. Id. at 105 (emphasis in original). In re Major Dynamics, 59 B.R. 697 (Bkr.S.D.Cal.1986), the IRS was trying post -petition to reach commingled funds held by the debtor.

. In re Air Florida Systems, Inc., 50 B.R. 653 (Bankr.S.D.Fla.), aff’d sub nom., United States v. Air Florida, Inc., 56 B.R. 732 (S.D.Fla.1985), the courts rejected the IRS’ argument that a pre-pe-tition tax payment in itself was sufficient to create a section 541 trust. The courts, however, relied on Randall and Slodov v. United States, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), both pre-Code cases, without addressing the Code’s legislative history and the question of the extent to which Congress intended to limit Randall. In addition, the bankruptcy court noted that “the IRS made no attempt to trace or identify any funds in controversy as taxes so collected or withheld” under 26 U.S.C. § 7501. 50 B.R. at 659. The bankruptcy court In re Design Store Corp., 67 B.R. 325 (Bankr.Md.1986), rejected the IRS' argument in similar circumstances, relying heavily on Air Florida Systems. See also In re Bulk Transport, 23 B.R. 538 (Bankr.E.D.La.1981), which relied solely on Randall.

. See note 11, supra.

. In its brief in United States v. Air Florida, No. 85-6034 (11th Cir.) (app. dism’d.), the United States adopted the analysis employed in Razorback and Rodriguez, (The lower court opinions are cited in note 28, supra.)

. In granting summary judgment on behalf of the trustee, the bankruptcy court in Olympic Foundry said it was undisputed that, due to commingling, the funds used for payment of retail sales taxes were not traceable to the corresponding receipts. It then proceeded to rule that, absent tracing, the taxing authority could not establish that a trust had been created based on the mere fact of payment. On appeal, the bankruptcy appellate panel of the Ninth Circuit held that there were disputed facts concerning whether tracing was possible, thereby precluding summary judgment. The panel therefore reversed without reaching the question before us of whether the mere fact of payment, when tracing is not possible, is sufficient to create a trust.

. As we noted earlier, see note 6, supra, Congress deleted the 45 day rule in 1984, but it applies in this case.

. The Report’s commentary on section 547(c) describes the "due" date as "the last day on which the tax may be paid without penalty."

.This conclusion becomes clearer from the Report’s later statement that:
a payment of taxes when they are due, either originally or under an extension, or within 45 days thereafter, will not constitute a voidable preference. However, if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference, if the other elements of a preference are present.
See text accompanying note 19, supra. We can detect nowhere in this passage any requirement that the funds used for such a timely payment be held separate, like trust funds, in order to avoid treatment as a preference. As for the statement relied on by the Trustee— "if [the taxes] have been properly held for payment”— we think it signifies only that if a debtor is able to pay over withheld taxes in a timely fashion, one may assume that the taxes “ha[d] been properly held for payment.”

. If the Senate had intended, under section 541(b)(3), to exclude withheld taxes entirely from estate property, eliminating any need to show that trust requirements had been satisfied, we would have expected a more unequivocal statement to that effect in the Senate Report’s commentary on section 541. Instead, the Senate Report merely adopts the language from the House Report that section 541 “will not affect various statutory provisions ... that create[ ] a trust fund for the benefit of a creditor of the debtor.” See text accompanying notes 17 and 23, supra. Since the Senate apparently believed that this language adequately captured that body’s intent, we conclude that the Senate in section 541(b)(3) sought only to state with specificity what had already been provided by the general language in the House bill.

. Under Randall, of course, the two issues are distinct. See note 18, supra.

. The bankruptcy court made no findings on when the penalty period began to run. We may easily calculate the time period, however, from the fact that Auto-Train was assessed a $1,322.26 late payment charge on a balance due of $6,611.29, which constitutes a 20% penalty. Under D.C. Code Ann. § 47-1813.1(c), a 5% penalty is assessed for each month (or fraction thereof) of delinquency. The 20% penalty assessed Auto-Train therefore must have been for a period lasting between three and four months.

. Since the pre-Code case law interpreting Randall required fairly strict tracing, courts would not have recognized a trust from the mere fact of payment. While the cases uniformly addressed post-petition situations, there is no reason to believe that, pre-Code, the date of the commencement of the case would have altered the outcome.

. The Trustee relies on the following passage from United States v. Whiting Pools, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983), in support of his argument that strict tracing is necessary:
Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition. See Section 541(b); H.R.Rep. No. 95-595, p. 368 (1977); S.Rep. No. 95-989, p. 82 (1978). Although it may well be that funds that the IRS can demonstrate were withheld for its benefit pursuant tó 26 U.S.C. § 7501 (employee withholding taxes), are excludable from the estate, see 125 Cong.Rec. 32417 (1978) (remarks of Rep. Edwards) (Service may exclude funds it can trace), the IRS did not attempt to trace the withheld taxes in this case.
As noted in Olympic Foundry, 63 B.R. at 328, this "language is dicta since the case involved property seized by the IRS, pursuant to a tax lien, prior to the filing of a Chapter 11 petition. The court ruled that the IRS was subject to turnover of the seized assets under 11 U.S.C. § 542(a) as property of the estate." Furthermore, the Court purported to do no more than paraphrase the joint explanatory statement. Finally, the Whiting Pools footnote does not address the question before us, which is not whether tracing is necessary (which the Court correctly noted is required), but rather how rigorous the required tracing must be.

. This conclusion derives further support from the passage in the joint explanatory statement regarding the waiver of sovereign immunity specifically with regard to recovery by trustees of tax payments constituting voidable preferences. See note 26, supra.

. Our dissenting colleague agrees with the court that the much disputed language in the House Report addresses the question of when a payment of estate property constitutes a voidable preference under section 547, and not the question of when a trust is created under section 541, diss. op. at 1118 n. 2, contrary to the interpretation offered by both of the parties and by the bankruptcy court opinions that we have analyzed. The obvious next step is to determine what this passage means with respect to section 547, but at this point the dissent loses its way. According to the dissenter, this passage in the House Report is "dispositive of the only issue properly reached in this case — whether Auto-Train’s payment can be voided as a section 547 preference.” Id. at 1118. Furthermore, we are told, this passage illuminates "section 547’s definition of a voidable preference,” id., but rather than explaining how the passage relates to the relevant terms of section 547 — in particular the term "antecedent debt” — the dissent, citing Razorback and Rodriguez, contends that this passage shields pre-petition payments from preferential treatment because such payments are of trust funds. Id. at 1118. Whether a payment is of trust funds, however, is first a question of what constitutes estate property under section 541, i.e., the precise issue that the dissent, in agreement with the court, believes was not addressed by this passage.
Read in the context of section 547, the passage means only that a timely tax payment is not for an "antecedent debt” and therefore does not constitute a voidable preference under section 547(b). Supra at 1112-14. We consequently consider the language inapposite to the facts of this case, in which it is undisputed that Auto-Train’s payment occurred long after it was "due;” therefore, it clearly was for an “antecedent debt.” It is only after concluding that the payment would qualify as a voidable preference, if it was from estate property, that we proceed to determine whether Auto-Train held the payment in trust. The remainder of the legislative history indicates that the mere fact of pre-petition payment is not sufficient to create a trust. As a result, the Auto-Train payment must be voided. (We therefore do not, as the dissent claims, rely upon the bald, bold, and by itself erroneous proposition that “if the funds were property of the estate, then the pre-petition payment would be a voidable preference." Diss. op. at 1119. (emphasis in original). Our decision proceeds from the facts before us, in which this untimely payment is a voidable preference unless it was made from funds held in trust.)