In re **NASH CONCRETE FORM CO., INC., Debtor.**

Eleanor F. **TAYLOR, Trustee,** **Plaintiff–Appellee,**

v.

Mitchell **ADAMS, Commissioner, Commonwealth of Massachusetts, Department of Revenue, Defendant–Appellant.**

Civ. A. No. 93–10945–MA.

United States District Court, D. Massachusetts.

Sept. 30, 1993.

Stephen E. Meunier, Mass. Dept. of Revenue, Boston, MA, for appellant.

Nancy K. McCarthy–Wasserman, Hanover, MA, for appellee.

Eleanor F. Taylor, pro se.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This appeal comes before me from an order of the United States Bankruptcy Court issued February 23, 1993. 151 B.R. 632. The defendant-appellant, the Massachusetts Department of Revenue ("MDOR"), seeks relief from that order, which denied Appellant's motion to dismiss an adversary proceeding brought by the Debtor, Nash Concrete Form Company, Inc. ("Nash"), under 11 U.S.C. § 547, to recover an alleged preferential transfer to MDOR.[1] The only question presented is a legal one: whether the Massachusetts statute, Mass.Gen.Laws ch. 62B, § 5, which creates a trust of withheld taxes in favor of the Commonwealth of Massachusetts, sufficiently parallels its federal counterpart, 26 U.S.C. § 7501, to render controlling the Supreme Court's holding in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). I conclude that the Massachusetts statute does so parallel the federal statute. Therefore, I vacate the order of the bankruptcy court and remand the case for further consideration in light of *Begier*.

Jurisdiction rests upon 28 U.S.C. § 158(a). I review questions of law on appeal from the Bankruptcy Court "de novo." *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir.1992). I provide the following statement of undisputed facts to place the legal question in context.

Nash operated its business in Massachusetts. Prior to filing its bankruptcy petition, Nash failed in its obligation, under Mass.Gen.Laws 62B, § 2, to pay to the IRS Massachusetts income taxes that Nash withheld from its employees' wages for the taxable periods April, 1988 through April, 1989.[2] As a consequence, it accrued liability to MDOR in excess of $70,000.00.[3] On or about January 4, 1990, after Nash neglected to respond to a demand for payment of withholding taxes, MDOR served a tax levy upon Nash's bank account, pursuant to its power under Mass.Gen.Laws ch. 62C, § 53. As a result of the levy, MDOR received and kept a total of $44,456.39, which it applied against Nash's total withholding tax liability. On March 29, 1990, Nash filed its bankruptcy petition under Chapter 11. On September 12, 1990, it commenced the instant proceeding against MDOR seeking recovery of the $44,456.39 as an avoidable preference under 11 U.S.C. 547(b).

In response, MDOR filed a motion to dismiss for failure to state a claim upon

---

**1.** Nash filed the adversary proceeding while operating as a debtor-in-possession under Chapter 11 of Title 11 of the United States Code. *See* 11 U.S.C. § 1107(a). From the time of the order converting this bankruptcy case from a case under Chapter 11 to one under Chapter 7, *see* 11 U.S.C. § 1112, the Chapter 7 Trustee has continued the prosecution of the matter.

**2.** Mass.Gen.Laws ch. 62B, § 2 states in relevant part:

Every employer making payment to employees ... of wages subject to tax chapter under sixty-two shall deduct and withhold a tax upon such wages in accordance with tables prepared by the commissioner[.]

**3.** Mass.Gen.Laws ch. 62B, § 10 makes the employer liable for payment of the tax required to be withheld under Section 2.

which relief could be granted, pursuant to Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b). In support of its motion, the Commissioner of Revenue for the Commonwealth ("Commissioner") argued that the tax monies Nash withheld from its employees' wages were held in trust for the Commonwealth of Massachusetts pursuant to Mass.Gen.Laws ch. 62B, § 5, and that, therefore, the levied funds were not property in which the debtor had an interest subject to the trustee's avoidance powers under 11 U.S.C. § 547(b). The Commissioner grounded its argument in the Supreme Court's decision in *Begier,* 496 U.S. 53, 110 S.Ct. 2258.

The debtor in *Begier* was a commercial airline ("AIA"). AIA had a duty under federal law to withhold federal income taxes and FICA taxes from its employees' wages, and also to collect excise taxes from its customers payable to the IRS. Under the terms of 26 U.S.C. § 7501(a), the amount of both the employment taxes withheld and the excise taxes collected was "held to be a special fund in trust for the United States." In 1984, AIA fell behind in making the required remittances to the government, and in February 1984, the IRS ordered AIA to deposit all taxes collected into a special segregated account. Notwithstanding that order, AIA failed to deposit into the segregated account sufficient funds to cover its tax obligations. Still, it remained current on those obligations through June 1984, voluntarily paying the IRS in part from the segregated funds and in part from its general operating funds. In July 1984, AIA filed bankruptcy, and the Chapter 11 trustee sought to recover as preferences the payments AIA made to the IRS during the 90 days preceding the bankruptcy filing. *Id.* at 55–56, 110 S.Ct. at 2261.

In denying the requested relief, the Supreme Court determined that none of the funds AIA paid to the IRS—regardless of the source—represented property of the debtor subject to the trustee's avoidance power, since the debtor held those funds in trust for the IRS. *Id.* at 59, 110 S.Ct. at 2263. The Court rejected the debtor's argument that a trust-fund tax is not "col-

lected or withheld" until the specific funds are either paid to the IRS with the relevant return or placed in a segregated fund. It held that a trust arises within the meaning of § 7501 at the time the employer pays the employee her net wages, i.e. her salary minus the required taxes. *Id.* at 60–62, 110 S.Ct. at 2263–64. Moreover, the Court declined to impose strict tracing rules upon the statutory scheme, noting that "[u]nlike a common-law trust, in which the settlor sets aside particular *property* as the trust res, § 7501 creates a trust in an abstract 'amount'—a dollar *figure* not tied to any particular assets—rather than in the actual dollars withheld." *Id.* at 62, 110 S.Ct. at 2265 (emphases in original).

While the Court recognized that the IRS "must show *some* connection between the § 7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligations," it concluded that this burden is satisfied "if the debtor is able to make the payments." *Id.* at 66, 110 S.Ct. at 2267 (emphasis in original). According to the Court, AIA's act of voluntarily paying its tax fund obligation provided sufficient proof of its ability to make the payments, and thus established the required nexus between the "amount" held in trust and the funds paid. *Id.* at 66–67, 110 S.Ct. at 2266–67. In sum, the Court affirmed the Court of Appeals' holding "that *any* prepetition payment of trust-fund taxes is a payment of funds that are not the debtor's property and that such a payment is therefore not an avoidable preference." *Id.* at 57, 110 S.Ct. at 2262 (emphasis in original).

MDOR argued in its Motion to Dismiss that, under *Begier,* the funds it levied from Nash's account and applied toward Nash's trust-fund tax liabilities were funds held in trust for the Commonwealth and therefore not subject to avoidance. In making its argument, it presumed that the language of the operative Massachusetts statute creating a trust of the "sum or sums" withheld in favor of the Commonwealth was interchangeable with that of the federal statute creating a trust in the "amount" of withheld taxes in favor of the United States, and thus that the Supreme Court's interpretation of the federal statute con-

trolled the interpretation of the similar Massachusetts statute.[4]

In its Motion in Opposition to Defendant's Motion to Dismiss, Nash did not dispute that the trust created by the Massachusetts statute matches that created by the federal statute. Rather, Nash argued that because the facts in *Begier* involved a debtor's *voluntary* pre-petition payments of trust-fund taxes, its reasoning should not be applied to an *involuntary* pre-petition payment of such taxes.

The bankruptcy court based its denial of MDOR's motion exclusively upon its determination that the Massachusetts law does not sufficiently parallel the federal law to make *Begier* controlling. *In re Nash Concrete Form Co., Inc.*, 151 B.R. 632, 634 (Bankr.D.Mass.1993). The court found a "manifest" difference between the trust-fund language in 26 U.S.C. § 7501, referring to the "amount" of taxes withheld, and that in Mass.Gen.Laws ch. 62B, § 5, referring to the "sum or sums" withheld, perceiving the language of Section 5 "not nearly as broad." *Id.* The court seemed to conclude that, unlike the federal provision, Section 5 applies only upon a showing that the funds paid or seized consist of the actual dollars withheld from the employees' wages. *Id.* I cannot agree with the bankruptcy court's analysis.

▆▆▆ Courts must interpret a law so as to effectuate the intent of the legislature in enacting it. *International Org. of Masters v. Woods Hole Steamship Auth.*, 392 Mass. 811, 813, 467 N.E.2d 1331 (1984). We discern legislative intent from the ordinary meaning of the words in a statute; only where there exists an ambiguity in statutory language does it become necessary or appropriate for us to explore external indications of legislative intent. *See id.* at 813–15, 467 N.E.2d 1331.

▆▆▆ In this case, the Commissioner contends that like its federal counterpart, 26 U.S.C. § 7501, Section 5 serves the legislature's purpose of establishing a broad statutory trust for the benefit of the Common-

wealth in the total taxes withheld from employees' wages and thereby comports with the aims of the statutory taxation scheme as a whole. Webster's Dictionary defines "sum" as "an indefinite or specified amount of money ... the whole amount: an existent total...." Webster's Third International Dictionary at 2289 (1971 ed.). Thus, the plain meaning of the statutory text of Section 5 supports the Commissioner's interpretation. A comparison with the wording of the federal statute, moreover, *bolsters* rather than denigrates this reading of the Massachusetts provision.

The bankruptcy court correctly observes that "amount" and "sum" are different words. Nonetheless, there is no "manifest" difference in meaning between the two words. On the contrary, the words are synonymous. *See id.*, definition of "amount" at 72, and "sum" at 2289 (1971 ed.) (listing each word as a synonym of the other). In short, the words "sum" and "amount" are interchangeable.

At least one other court has recognized the equivalency of these terms in this very context. In the pre-*Begier* case of *Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987), Chapter 7 trustees sought to recover as a preferential transfer a withholding tax payment the debtor made to the District of Columbia prior to filing bankruptcy. In language substantially identical to the Mass.Gen.Laws ch. 62B, § 5, the District of Columbia Code, like the Internal Revenue Code, created a statutory trust for withheld employee income taxes. The D.C.Code provided in relevant part: *"Any sum or sums withheld* in accordance with the provisions of this section shall be deemed to be, and shall be, held in trust by the employer for the District." *Id.* at 1105 (emphasis added) (quoting D.C.Code Ann. § 47–1812.8(f)(1) (1980)). The court found that the federal provision, 26 U.S.C. § 7501, "essentially mirrors the [statutory trust] provision on which the District ... relies." *Id.* Accordingly, both the majori-

---

4. Mass.Gen.Laws ch. 62B, § 5 provides in relevant part:

> Any sum or sums withheld in accordance with the provisions of section two [requiring employers to deduct and withhold taxes from employees' wages] shall be deemed to be held in trust for the commonwealth.

26 U.S.C. § 7501 provides in relevant part:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.

ty and dissent, in analyzing the legislative history of 11 U.S.C. §§ 541 and 547, treated the D.C.Code provision and Section 7501 as interchangeable.

I find an equivalent degree of congruence between Section 7501 and Mass.Gen. Laws ch. 62B, § 5. This construction of Section 5 finds support not only in the ordinary meaning of its words, but in the purpose which the statute manifests. The language of Mass.Gen.Laws ch. 62B, § 2, requiring employers to deduct and withhold taxes from employees' wages, tracks the language of Section 3402(a)(1) of the Internal Revenue Code. No reason exists in logic, fairness, or bankruptcy or tax policy for the Massachusetts Legislature to provide a less effective means by which the Commonwealth might collect taxes withheld on its behalf than Congress provided the United States.

Yet, under the bankruptcy court's reading of Section 5, an employer could prevent the creation of a trust simply by refusing to segregate the funds resulting from the tax withholdings. Nothing in Section 5 indicates that the Massachusetts Legislature wanted the debtor's whim to dictate the extent of protection afforded the Commonwealth's treasury, and I decline to interpret the statute as condoning such an anomalous result. *See Simon v. Solomon,* 385 Mass. 91, 100, 431 N.E.2d 556 (1982) ("A statute should not be read in a manner that defeats its intended utility."); *Manning v. Boston Redevelopment Auth.,* 400 Mass. 444, 453, 509 N.E.2d 1173 (1987) ("A statute ... should not be construed in a way that produces absurd or unreasonable results when a sensible construction is readily available."); *see also Begier,* 496 U.S. at 61, 110 S.Ct. at 2264 (refusing to construe Section 7501 to permit an employer to avoid the creation of a trust simply by refusing to segregate funds).

In sum, I find that Mass.Gen.Laws ch. 62B, § 5, is intended to replicate the effect of its counterpart in the federal code, 26 U.S.C. § 7501. Thus, the bankruptcy court erred in refusing, on the basis of the differences in breadth it perceived between Section 5 and Section 7501, to apply the Supreme Court's reasoning in *Begier* to its assessment of MDOR's Motion to Dismiss. *See Packaging Indus. Group, Inc. v. Che-* ney, 380 Mass. 609, 611, 405 N.E.2d 106 (1980) ("Where the Legislature in enacting a statute follows a federal statute, we follow the adjudged construction of the federal statute by the federal courts."). Under *Begier,* Section 5 creates a trust in favor of the Commonwealth in the abstract *total* of taxes withheld from employees' wages. The resulting trust fund consists of "a dollar *figure* not tied to any particular assets ... rather than in the actual dollars withheld." *Begier,* 496 U.S. at 63, 110 S.Ct. at 2265. Consequently, contrary to the bankruptcy court's intimation, MDOR had no obligation to prove that the funds it levied were the very funds Nash withheld from its employees' wages. Instead, under *Begier,* MDOR was required to show only that Nash was objectively "able to make the payments." *Id.* at 66, 110 S.Ct. at 2267. The fact that Nash had funds in its bank account which became subject to MDOR's levy would itself seem to prove Nash's ability to remit the levied amounts.

As mentioned above, Nash, in opposing MDOR's Motion to Dismiss, did not dispute that Mass.Gen.Laws ch. 62B, § 5 parallels 26 U.S.C. § 7501. Instead, it attempted to distinguish *Begier* on its facts. Specifically, Nash argued that because *Begier* involved a debtor's *voluntary* pre-petition payment of trust-fund taxes, its reasoning should not be applied to an *involuntary* pre-petition payment of trust-fund taxes like that which resulted from MDOR's levy of Nash's account. The bankruptcy court's opinion does not address that argument, nor does it reveal generally whether the court would have reached a different outcome had it recognized the parity between Section 5 and Section 7501.

Accordingly, the judgment of the bankruptcy court is vacated and the case remanded for further proceedings consistent with the foregoing opinion.

SO ORDERED.