In re RIMMER CORPORATION t/a
The Deluxe Diner, Debtor.

Fred ZIMMERMAN, Trustee, Plaintiff,

v.

COMMONWEALTH of
PENNSYLVANIA,
Defendant.

Bankruptcy No. 85–01959K.
Adv. No. 87–0256S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 11, 1987.

Paul N. Mashmeyer, Philadelphia, Pa., for plaintiff.

Prince Atlee Thomas, Philadelphia, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

This adversarial proceeding, brought by the Chapter 7 Trustee of the Debtor to recover an alleged preferential transfer from the Debtor to the Defendant Commonwealth for tax liabilities, turns on whether the Trustee has met the requirement set forth in 11 U.S.C. § 547(b)(5), which recites that the creditor must receive more as a result of the transfer than it would have received in a liquidation of the Debtor. Because the Defendant stands in a senior lien position and would have stood to recover at least the amount of the alleged preferential transfer had the Debtor been liquidated at the time of the filing of its petition, assuming return of the transfer payment, we hold that the requirement of § 547(b)(5) is not met, and hence that the Defendant must prevail.

The underlying bankruptcy case was filed as a Chapter 11 proceeding by the Debtor, then operating a diner in centercity Philadelphia, on May 15, 1985. However, on July 17, 1986, the case was converted to

a Chapter 7 proceeding, and the next day the Plaintiff in this action was appointed as the Trustee.

The instant proceeding was commenced against the Defendant Commonwealth of Pennsylvania by the Plaintiff on March 17, 1987. After several continuances, we urged the parties to settle or try this matter on September 29, 1987. On that day, they appeared before us with a comprehensive Stipulation of Facts, incorporating therein a Stipulation regarding numerous documents which the parties agreed could be admitted into the record. On September 30, 1987, we entered an Order confirming a briefing schedule to which the parties had agreed: the Plaintiff would file an opening Brief by October 30, 1987; the Defendant, its Brief by November 23, 1987; and the Plaintiff, a reply Brief by November 30, 1987.

The parties' fact Stipulation provided that, on August 15, 1984, the Defendant filed, in appropriate fashion in state court, a tax lien for unpaid sales and use taxes for all periods from September, 1981, through July, 1983, in the total amount of $70,152.95.

The only creditor whose secured status was arguably senior to the Defendant was one Robert McMahan, an officer of the Debtor, who had allegedly obtained a security interest against all equipment, furnishings, inventory, accounts receivable, and general tangibles of the Debtor on March 4, 1985. However, the parties further stipulated that McMahan had improperly failed to file a copy of his purported security interest "in the county of the Debtor's assets." We note that the Plaintiff has brought suit against McMahan at Adversary No. 87–0907S, seeking to recover a post-petition payment of $15,674.12 which the Debtor, while in possession, paid to McMahan on or about May 20, 1986, on account of this purported security interest.

On May 10, 1985, the Defendant executed on its lien and closed the diner. That same day, the Debtor paid the $28,000.00 transfer in issue to the Defendant from its general funds. Rather than pay the balance due that day to the Defendant, the Debtor chose to file its Chapter 11 petition on May 15, 1985.

The parties stipulated that, as of May 15, 1985, the Debtor's assets and liabilities were as follows:

Assets

| | | |
|---|---|---|
| Cash transferred to Defendant | | $ 28,000.00 |
| Other Cash | | 500.00 |
| All other assets | | 11,480.00 |
| | Total | $ 39,980.00 |

Liabilities

| | | |
|---|---|---|
| Internal Revenue Service | | $ 71,334.50 |
| Defendant | | 70,152.95 |
| City taxes | | 11,780.00 |
| Allegedly secured debt to McMahan | | 17,000.00 |
| Unsecured trade debt | | 21,944.25 |
| | Total | $192,211.70 |

The Defendant argues two defenses: (1) State law provisions that sales and use taxes constitute a trust fund for the state in the hands of a taxpayer, *see* 73 P.S. § 7225 and 62 PA.CODE § 34.2(d), exclude such funds from property of the Debtor's estate, thus making them property of the Defendant and entitling it to retain the payment; and (2) The Debtor fails to meet the requirement of 11 U.S.C. § 547(b)(5), which provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

. . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such a creditor received payment of such debt to the extent provided by the provisions of this title.

The first defense is a mirror image of that rejected by us in an earlier case involving the same Defendant, *In re Miller's Auto Supplies, Inc.,* 75 B.R. 676 (Bankr.E.D.Pa.1987) (hereinafter referred to as "*Miller*"). In *Miller,* following our earlier dictum in *In re American International Airways, Inc.,* 70 B.R. 102, 105

(Bankr.E.D.Pa.1987) (hereinafter referred to as *"AIA"*), we held that we would find the existence of a tax trust fund exempting funds payable to a taxing authority from the property of the Debtor's estate only where the taxing authority could trace funds of the Debtor actually segregated for the purpose of paying the taxes in issue. Since, in the statement of the case in *Miller,* there was no indication that funds had been or had not been so segregated, we found the transfer there, otherwise agreed to be preferential, to in fact be preferential.

We note reinforcement of the accuracy of that decision by the first Court of Appeals decision to consider the question, *Drabkin v. District of Columbia,* 824 F.2d 1102 (D.C.Cir.1987). Our reasoning in *AIA,* as applied in *Miller,* is expressly noted by the *Drabkin* court with approval. *Id.* at 1110 n. 27.

Furthermore, the facts in favor of the Defendant's position on this theory are weaker here than in *Miller.* Here, the parties stipulated that the $28,000.00 allegedly preferential payment was made from the Debtor's general funds and not from segregated funds. In *Miller,* the questions of the source and segregation of the funds were unanswered and the case was decided strictly on the allocation of the burden of proof. Here, the position of the Defendant is revealed as a contention that, simply because the state legislature and a state regulatory body provide that amounts due to it are to be considered as trust funds, they must be considered as such, irrespective of the actions of the "trustee"—debtor which in fact treat the funds to be paid to meet these obligations differently. An attempt by a state legislature and state agency to attempt to serve itself with establishment of a priority position for the state in a bankruptcy by its own act of legislation therefore emerges. We continue to believe that priorities in distribution of funds of a Debtor's estate are established exclusively by the federal Bankruptcy Code except where the Code itself indicates to the contrary, and that attempts of the state to circumvent the Code's priorities must be deemed ineffectual. In that way, the "principle of equal distribution in a bankruptcy proceeding," one of bankruptcy's fundamental precepts, is furthered. *See AIA,* 70 B.R. at 105.

However, the Defendant fares much better in asserting its second defense. For, in order to prevail in meeting the criterion of § 547(b)(5), the Plaintiff is forced to confront the undisputed principle that a payment to a secured creditor is not preferential. *See, e.g., In re Missionary Baptist Foundation of America, Inc.,* 796 F.2d 752, 759 (5th Cir.1986); *In re Mason & Dixon Lines, Inc.,* 65 B.R. 973, 977 (Bankr. M.D.N.C.1986); *In re Zachman Homes, Inc.,* 40 B.R. 171, 172 (Bankr.D.Minn.1984); and *In re Hale,* 15 B.R. 565, 567 (Bankr.S. D.Ohio 1981).

The Plaintiff attempts to avoid the application of this principle here by arguing, first, that the significant time for constructing the hypothetical liquidation of the Debtor's estate is the date on which the petition is filed, as opposed to considering postpetition developments. *See, e.g., In re Tenna Corp.,* 801 F.2d 819, 821–23 (6th Cir.1986); *In re Independent Clearing House Co.,* 41 B.R. 985, 1013 (Bankr.D. Utah 1984); and *Zachman, supra,* 40 B.R. at 173. Secondly, he points out that, per 11 U.S.C. § 506(a), the security interest of an undersecured party is measured by the value of the secured property rather than the amount of the claim. *See, e.g., In re Prescott,* 805 F.2d 719, 726 (7th Cir.1986); *Barash v. Public Finance Corp.,* 658 F.2d 504, 507–09 (7th Cir.1981); *In re Auto–Train Corp.,* 49 B.R. 605, 609–11 (D.D.C.1985); and *In re Fitzgerald,* 49 B.R. 62, 64–65 (Bankr.D.Mass.1985). That this principle applies to governmental tax claims as well as other secured claims is addressed in our Supplemental Opinion in *In re Blakey,* 78 B.R. 435, 437–38 (Bankr.E.D.Pa.1987).

The flaw in the Plaintiff's reasoning is not the assertion of the two above general principles, although, as we indicate below, the preferential payment must be restored to the Debtor in the § 547(b)(5) computation as well as reconstructing the status of the Debtor's assets and liabilities as of the date of the filing of the petition. Rather,

we believe that the Plaintiff's most serious problems arise in its analyses of the pertinent facts here and their application to these principles.

The Plaintiff contends that, since the value of the Debtor's machinery, equipment, and inventory at the date of the bankruptcy filing was but $11,480.00, the extent of the Defendant's secured claim was only $11,480.00. He then proceeds to calculate that, sharing pro rata with other priority claimants, the Defendant would receive a distribution of only $10,554.92 on the balance of its priority claim which, added to the $11,480.00 secured claim, would cause it to receive $22,034.92 in a hypothetical Chapter 7 distribution as of May 15, 1985. Thus, he argues that the $28,000.00 payment received by the Plaintiff was in excess of that which would have been received in the hypothetical distribution required by § 547(b)(5), rendering the transfer preferential.

The flaw in this reasoning process is failing to consider either the $28,000.00 payment to the Defendant or the other $500.00 in cash which were stipulated to be among the Debtor's assets on May 15, 1985, as part of the Debtor's tangible property, to all of which the Defendant's first-priority lien extended. There is no reason *not* to include cash among the tangible property within the scope of the lien, as the language of the pertinent statute provides that the lien extends to *all* of the taxpaper's real and personal property, *see* 72 P.S. § 7242(a), (b), (d).

■ As we suggested above, we believe that the $28,000.00 payment itself must be considered part of the Debtor's estate as of May 15, 1985, for purposes of making the § 547(b)(5) computation, even though it was paid out to the Defendant on May 10, 1985. In order to measure the effect of a preferential payment for purposes of § 547(b)(5), it must be assumed that the payment itself is restored to the estate. *See Palmer Clay Products v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 450, 80 L.Ed. 655 (1936); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir.1985); and *In re Abramson*, 715 F.2d 934, 939 n. 9 (5th

Cir.1983). Practically, it would make no sense to discount the $28,000.00 payment in measuring the extent of the Defendant's security interest for purposes of a § 547(b)(5) analysis. If the Defendant were compelled to pay over the $28,000.00 to the Trustee, the Trustee, in recognition of the Defendant's first priority secured position, would simply be obliged to repay it to the Defendant anyway.

■ In restating the principle that a payment to a secured creditor is not generally preferential, in light of the impact of § 506(a), the court in *In re Zuni*, 6 B.R. 449, 452 (Bankr.D.N.M.1980), states that "the more correct formulation would be that payment of a secured claim is not a preference if such payment is accompanied by the release of an equivalent value to the estate." *Accord, In re Prescott*, 51 B.R. 751, 754 n. 1 (Bankr.W.D.Wis.1985), *reinstated*, 805 F.2d 719 (7th Cir.1986). Here, the estate released $28,000.00 of a first-priority secured claim in the amount of $39,-980.00 in exchange for the transfer. We fail to see where the estate suffered any loss in its value in doing so.

Hence, we are compelled to agree with the analysis of the Defendant contending that the extent of its secured claim, as of May 15, 1985, was $11,480.00 plus the $28,-500.00 cash of the Debtor as of that date, including the $28,000.00 paid to the Defendant, or $39,980.00. Therefore, the Defendant's claim was secured to a greater extent than the $28,000.00 payment by the Debtor to it. The outcome is thus controlled by the principle that a payment made to a secured claimant, the priority of whose security extends to at least the amount of the payment made, is not preferential.

An Order entering judgment for the Defendant will therefore be entered by us.