In re E & S COMFORT, INC., Debtor.

Maurice W. BAEHR, Sr., Trustee of the Estate of E & S Comfort, Inc., Plaintiff,

v.

INTERNAL REVENUE SERVICE CENTER, Defendant.

Maurice W. BAEHR, Sr., Trustee of the Estate of E & S Comfort, Inc., Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE, Defendant.

Bankruptcy No. 85–05474S.
Adv. Nos. 87–1057S, 87–1064S.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 20, 1988.

Steven Usdin, Philadelphia, Pa., for plaintiff.

Mark O. Prenatt, Office of Atty. Gen., Philadelphia, Pa., for Pennsylvania.

Henry S. Friedman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. Introduction and Procedural History

The instant consolidated proceedings were brought by the Trustee of a Chapter 11 Debtor to avoid, as preferences, pre-petition transfers made by the Debtor to federal and state taxing authorities as payment for that portion of employees' income taxes which it was obliged to withhold from their pay. It raises several provocative issues. Unfortunately, the Trustee, in the course of addressing these issues, apparently became distracted from meeting his burden of proving a necessary element of his case, i.e., that the taxing authorities received more by means of the transfers than they otherwise would have received, pursuant to 11 U.S.C. § 547(b)(5). Consequently, on the basis of failure to establish the element of § 547(b)(5), judgment must be entered in favor of the taxing authorities. We do discuss some of the other issues, indicating that, even had he met his burden as to § 547(b)(5), there is a question as to whether the Trustee would have prevailed.

The underlying Chapter 11 bankruptcy was commenced as an involuntary case on December 19, 1985. The demise of the Debtor is described in an Opinion dismissing dischargeability complaints instituted by the United States Government against two of the Debtors' three principals, brothers named Irvin and Alfred Stelweck, in In re Stelweck, 86 B.R. 833, 836–43 (Bankr.E. D.Pa.1988). The Debtor was a distributor of seat-lift chairs which the Government came to suspect was submitting fraudulent Medicare claims by means of improperly altering forms forwarded to the Debtor by doctors seeking to obtain Medicare reimbursement for such chairs for their patients. The Government's consequent suspension of Medicare reimbursement payments in late November, 1985, caused the Debtor to lay off all of its employees and cease operations within a month. The Debtor did not contest the involuntary petition and itself moved for appointment of a Trustee. As a result, MAURICE W. BAEHR, SR., the Plaintiff in these proceedings, was appointed on December 30, 1985.

The instant Adversary proceedings were commenced almost two years later, on the same date, December 18, 1987. The Defendant in a case involving transfers in excess of $175,000.00, the Federal INTERNAL REVENUE SERVICE CENTER (hereinafter referred to as "the IRS"), answered on January 12, 1988. The Defendant in the other proceeding, involving transfers of only about $16,500.00, the COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE (hereinafter "PA"), initially responded by filing a Motion for a more specific pleading on January 20,. 1988. We denied this motion on May 4, 1988, and an Answer was filed on May 20, 1988.

Because of their common filing date, the two proceedings were listed for trial on the same date and both were continued to the same later dates several times until June 22, 1988, on which date the three interested parties agreed that the cases could be heard together in a single consolidated trial. A mutual request for a transcript and the production of same delayed the submission of Proposed Findings of Fact, Proposed Conclusions of Law, and Briefs from the three parties involved until October 11, 1988.

As we indicated above, we are resolving these Complaints solely on the ground that the Trustee failed to meet his burden of proving the element of a preferential transfer set forth in 11 U.S.C. § 547(b)(5). We

are, nevertheless, required to render our decision in the form required by Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a), and we are rendering sufficient factual findings and conclusions of law, including discussion thereafter, to give some substance to our statements relative to the other issues raised by the parties.

## B. Findings of Fact

1. The Debtor commenced doing business in 1984 as E & S Comfort, Inc. Thereafter, in October of that year, it changed its original trading name to E.F.A.C., Inc. t/a E & S Comfort.

2. Immediately thereafter, the Debtor established, *inter alia*, a bank checking account entitled E.F.A.C., Inc. Tax Account (hereinafter "the Account").

3. Eileen Cohen was President of the Debtor and was, with the Stelweck brothers, and both of whom are presently incarcerated due to matters unrelated to the Debtor, one of three principals of the Debtor. Cohen was totally familiar with the Debtor's books and records and testified with apparent candor at the hearing.[1]

4. Cohen testified that the Account was established for the specific purpose of paying out taxes, such as the amounts withheld from employees' wages in issue in this matter.

5. In early July and in early August, 1985, Cohen and each of the Stelweck brothers decided to pay bonuses of $35,000.00 (July) and $90,000.00 (August) each to themselves. The reasons for these payments at this time were explained by Cohen as follows: (1) They were deferred gratification to the principals as a reward for their foregoing compensation; (2) They were justified by the cash flow of the business; and (3) The Stelweck brothers each needed about $50,000.00 net after taxes to finance their criminal defenses.

6. Cohen stated that the July and August bonuses were not recorded in the Debtor's payroll books until September and October, 1985, respectively. According to Cohen, the Debtor's accountant suggested that the Debtor's remittances of the withholding taxes for these large, non-periodic payments could be broken down and paid in portions throughout the remaining weeks of 1985.

7. Apparently pursuant to this advice, the Debtor remitted checks dated as follows to the IRS from the Account for federal income taxes withheld:

| | Date | Amount |
|---|---|---|
| (a) | September 30, 1985 | $ 5,700.00 |
| (b) | October 18, 1985 | 6,000.00 |
| (c) | October 31, 1985 | 8,917.47 |
| (d) | November 7, 1985 | 50,000.00 |
| (e) | November 15, 1985 | 20,000.00 |
| (f) | November 22, 1985 | 5,000.00 |
| (g) | November 29, 1985 | 38,000.00 |
| (h) | December 6, 1985 | 42,000.00 |
| | TOTAL | $175,617.47 |

8. Also apparently pursuant to this advice, the Debtor remitted checks dated October 28, 1985, and November 25, 1985, in the amounts of $9,229.58 and $7,266.44, respectively, to PA for state income taxes withheld from the Debtor's employees. William S. Gordon, a Revenue Investigation Supervisor of PA (hereinafter "Gordon"), testified, however, that the earlier check was not recorded as "received" by PA until November 5, 1985.

9. The Trustee, called, as his only witness in addition to Cohen, George Miller, the Trustee's court-appointed accountant (hereinafter "Miller"). Miller testified that, as of September 1, 1985, the Account balance was only $1,031.37.

---

1. To the extent that Ms. Cohen was biased, we might expect her to be biased in favor of the taxing authorities, particularly the IRS, because of the spectre of potential personal liability for tax obligations not satisfied in the (E.D.Pa. August 8, 1988). However, this observation is offset by our advice that Cohen filed and was discharged in a subsequent personal Chapter 7 case in which the IRS made no claim, apparently discharging any potential liability. Thus, she was, in all probability, totally disinterested.

10. Cohen conceded that at least nine checks were drawn on the Account to pay expenses other than taxes in November, 1985. She stated that these withdrawals were necessary because "the accountant, at . this time, had our regular checking account book. And since these had to be paid, we had to write them from someplace."

11. Miller testified, without dispute, that federal withholding taxes must be paid to the IRS within three business days after the receipt of the pay for which taxes are withheld by the employer.

12. Miller also testified, and Gordon concurred, that the Debtor was registered with PA as a quarterly filer at all times. Miller and Gordon agreed that a quarterly filer is required to make payments for state withholding tax on or before the last day of the month following a particular quarter. As a quarterly filer, the Debtor's third quarter tax payments to PA would be due on October 31, 1985, and its fourth quarter payments would be due on January 31, 1986.

13. However, these witnesses also agreed that, if an employer's payments in a quarter exceed $1,000.00, as did those ultimately reported by the Debtor for the third and fourth quarters of 1985, it should be considered as a monthly filer, in which case payments would be due the 15th day of each month following the payments.

14. Gordon stated that a reconciliation form is supposed to be filed with PA by the taxpayer on the last day of the month following a calendar quarter and that PA does not assess a penalty for unpaid taxes against the taxpayer for unpaid taxes until such a reconciliation form is filed. Although the Debtor should have filed such a form, it never did so, and no penalty was ever assessed against it by PA.

15. Neither Miller, who would appear to have been capable to do so, nor any other witness, testified regarding the assets or liabilities of the Debtor, nor provided any other testimony relevant to the issue of the Debtor's insolvency or its ability and plan to pay its creditors in its bankruptcy case.

### C. Conclusions of Law/Discussion

1. THE TRUSTEE FAILED TO MEET HIS BURDEN OF PROVING THAT THE PAYMENTS IN ISSUE ALLOWED THE TAXING AUTHORITIES TO RECEIVE MORE THAN THEY WOULD HAVE RECEIVED IN A CHAPTER 7 LIQUIDATION, WHICH REQUIRES ENTRY OF JUDGMENT IN FAVOR OF THE DEFENDANTS.

In order for pre-petition transfers by a debtor to be classified as preferential, there are five conditions which must be met, as set forth as follows in 11 U.S.C. § 547(b):

(b) Except as provided in subsection (c), the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; of

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of the title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Two subsequent provisions of 11 U.S.C. § 547 address the issue of who has the burdens of proof in establishing these elements, 11 U.S.C. §§ 547(f) and (g), which provide as follows:

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

■ The only conclusion which can conceivably be reached from a reading of these two sections together regarding the element set forth in § 547(b)(5) is that the Trustee has the burden of proving same. Therefore, the absence of any evidence on the record as to this element mandates a judgment in favor of the transferee-defendants.[2]

We reach this conclusion rather regretfully, because, from a review of documents filed in the main case, it appears that, but for an apparent oversight in failing to adduce same from him, Miller may have been able to present testimony which would have met the Trustee's burden on this score. However, without introduction of any portion of it as evidence on the record in this proceeding, we cannot stray into the record of the main case to find evidence to support the Trustee on this issue. *See, e.g., In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir.1942); and *In re Nicolet, Inc.,* 80 B.R. 733, 742–44 (Bankr.E.D.Pa.1987). *Compare In re Air Conditioning, Inc. of Stuart,* 845 F.2d 293, 297 (11th Cir.1988)

(court can and will take judicial notice of any bankruptcy schedules for purposes of determining presence of § 547(b)(5) element when the trustee requests the court to do so and there is no objection to it doing so). We would observe, however, that given the rather spectacularly rapid demise of the Debtor, the schedules do not necessarily support the Trustee on this point.[3]

Therefore, irrespective of our result on the other issues raised by the parties, we are compelled to render judgment in favor of the Defendants because the element of § 547(b)(5) has not been proven by the Trustee. *See In re Rimmer Corp.,* 80 B.R. 337 (Bankr.E.D.Pa.1987). However, we further note that it is not clear that the Trustee would have prevailed even if he had met his burden pursuant to § 547(b)(5).

## 2. THE TRANSFERS TO THE IRS AND PA MAY HAVE BEEN PROPERLY CLASSIFIABLE AS TRUST FUNDS WHICH ARE NOT PROPERTY OF THE DEBTOR'S ESTATE

On the other issues presented by this proceeding, all of the parties refer prominently to, and all apparently rely upon, at least in part, upon our previous decision in *In re American International Airways, Inc.,* 83 B.R. 324 (Bankr.E.D.Pa.1988), *aff'd,* C.A. No. 88–3529 (E.D.Pa. August 15, 1988) (hereinafter "*AIA II*"). That case followed earlier decisions of this court addressing the issue of whether taxing authorities can defend claims of preferential transfers on the ground that the pre-petition payments are funds held in trust which are not

**2.** We do not agree with the assertion of the IRS that the same holds true as to proof of insolvency per 11 U.S.C. § 547(b)(3). In light of 11 U.S.C. § 547(f), in the absence of any evidence tending to disprove same, insolvency in the 90-day "preference period" is presumed. *See, e.g., In re Art Shirt, Ltd.,* 68 B.R. 316, 322 (Bankr.E.D.Pa.1986), *aff'd,* C.A. Nos. 87–1175 and 87–1176 (E.D.Pa. March 10, 1988) [available on WESTLAW, 1988 WL 26820]. *See also* 4 COLLIER ON BANKRUPTCY, ¶ 547.21[5], at 547–84 to 547–85 (15th ed. 1988).

**3.** Although they are not evidence, and their contents cannot be considered, the contents of the Schedules, unlike the *Air Conditioning* case *supra,* do not necessarily support the Trustee's

position. The Schedules, filed on April 21, 1986, list debts totaling $2,866,947.62 and assets of $5,559,093.00. However, much of the listed assets are apparently account-receivable claims against the Government which have subsequently been compromised for $1,000,000.00. Recent monthly Operating Reports list cash in possession of the Trustee in excess of $800,000.00. The Claims Docket includes unsecured claims totaling in excess of $1,000,000.00. The Trustee has filed a liquidating Plan and Disclosure Statement, listed for a Confirmation hearing on November 2, 1988. However, these are non-committal on the anticipated percentage return to unsecured creditors.

"property of the estate" of the debtors. *See Rimmer, supra; In re Miller's Auto Supply, Inc.,* 75 B.R. 676 (Bankr.E.D.Pa. 1987), *remanded,* 93 B.R. 342 (E.D.Pa. July 12, 1988), *reinstated on remand* 93 B.R. 344 (Bankr.E.D.Pa.1988); and *In re American International Airways, Inc.,* 70 B.R. 102 (Bankr.E.D.Pa.1987) (hereinafter *"AIA I"*). In *AIA I,* we held, though not without recognizing the plausibility of a contrary position, that, when a debtor properly segregates income tax payments withheld from employees in an account for that purpose, a trust in favor of the government taxing authority must be found to exist, and payments from such an account cannot be avoided as preferential.

Our recognition of the plausibility of a contrary position arose from our belief that creditors should not be able to lightly establish preferences in distribution not authorized expressly in the Bankruptcy Code by the medium of a contention that certain payments were the res of a trust. *AIA I, supra,* 70 B.R. at 105. *Accord, In re Auto-Train Corp., Inc.,* 810 F.2d 270, 273–74 (D.C.Cir.1987); *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1419–20 (9th Cir. 1985); and *In re Behring International, Inc.,* 61 B.R. 896, 899–902 (Bankr.N.D.Tex. 1986). However, the legitimacy of "tax trusts" was mandated by express statements contained in the joint explanatory Statement relating to the Bankruptcy Code issued by both houses of Congress, 124 CONG.REC. 32350, 32417 (1978) (Statement of Rep. Edwards); and 124 CONG. REC. 34016–7 (1978) (Statement of Sen. DiConcini), cited with approval by the Supreme Court. *United States v. Whiting*

*Pools, Inc.,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983). *AIA I,* 70 B.R. at 104–05.

In *Miller* and *Rimmer,* in the context of actions against state taxing authorities, we applied the *AIA I* dictum that we would interpret the scope of such "tax trusts" narrowly. We therefore rejected, in those cases, the state's contention that the respective debtors' obligations to establish "tax trusts" eliminated the potential of a preferential transfer even when the respective debtors did not, in fact, perform according to these obligations. We pointed out that the reasoning of the state, if adopted, would effectively eliminate all use of § 547(b) against taxing authorities. *Rimmer,* 80 B.R. at 338–39; and *Miller,* 75 B.R. at 679–82. *Accord, Drabkin v. District of Columbia,* 824 F.2d 1102, 1106–15 (D.C.Cir.1987).[4]

In *AIA II,* we were confronted with a status of transfers made by the Debtor to the IRS from its general accounts in addition to the payment made from its trust fund account, which we already had excluded from property of the estate in *AIA I.* We decided several issues which are of comfort to the Trustee here. First, we affirmed our previous holdings that tax payments could indeed be preferential. 83 B.R. at 328–29. Secondly, we held that the mere obligation of the debtor to establish a trust fund did not exempt the funds transferred by the Debtor from categorization as "property of the estate." *Id.* at 329. Both of these findings are of benefit to the Trustee here, because, without them, he would clearly not have a cause of action.

---

**4.** The district court, in *Miller,* affirmed our holding that payments to taxing authorities could indeed be preferential if the debtor did not in fact fulfill its obligation to place withholding taxes in trust. However, it remanded our decision because of its holding that we improperly required the taxing authority to bear the burden of tracing the allegedly preferential transfer to a trust account, as opposed to requiring the trustee to prove that the transfer of "an interest of the debtor in property" was effected, per the preamble of § 547(b). In so holding, the district court may have overlooked the fact that a claim that property is in a trust fund and is

therefore not property of the debtor's estate is an assertion of an extraordinary situation which is a narrowly-construed exception to the rule that funds of the debtor are property of the estate. We read *Drabkin,* which the district court purports to follow, as suggesting a holding directly contrary to that reached by the district court. The *Drabkin* court states, 824 F.2d at 1115, that a payment "qualifies as a voidable preference under section 547(b)–(c) *unless* the funds used are traceable to a trust and therefore are excluded from the debtor's estate under section 541."

■ However, a close reading of the *AIA II* decision reveals that we rejected the argument of the Trustee there that all tax payments from the debtor's general accounts were perforce not properly characterized as "trust funds" from which payments could be deemed preferential. We allowed the Trustee to avoid the transfer of only $488,773.98 of the April 30, 1984, payment of $734,797.71 from the debtor's general accounts, as well as $211,636.35 in subsequent transfers from the debtor's general accounts. *Id.* at 327, 328. The amount of $488,773.98 represented only the January and February, 1984, withholding taxes, which amount we held was preferentially transferred because it could *neither* be allocated to the payment from the trust fund account *nor* be considered to have been timely paid. This result manifests our conclusion that taxes which are timely paid from any account of a debtor, including a general account, can be exempted from property of the debtor's estate.

We therefore do not accept the principal argument of the Trustee here as to why no "trust fund" exists here, i.e., that there were payments of expenses other than taxes from the Account in issue. Our decision in *AIA II* concludes that it is not significant to the exemption of funds from property of the estate as the res of "tax trust" that taxes are paid from a "tax trust account," but only that they are properly withheld and remitted from some account of the Debtor.[5] *But cf. In re Major Dynamics, Inc.,* 59 B.R. 697, 698, 700–01 (Bankr.S.D. Cal.1986) (in context of non-preference proceeding, court holds that deposit of funds in a segregated account is necessary to create a "tax trust").

Furthermore, all of the cases which have considered the point have held that the "reasonable assumption" rule rather than the "strict tracing" rule determines whether funds deposited in a given account can

be presumed to be "tax trust" funds. *See Drabkin, supra,* 824 F.2d at 1115–17; and *In re Olympic Foundry Co.,* 63 B.R. 324, 328–29 (Bankr.W.D.Wash.1986). Citing to legislative history, 124 CONG.REC. 32417 (1978) (Statement of Rep. Edwards); and 124 CONG.REC. 3401 (1978) (Statement of Sen. DiConcini), we approved the use of the "reasonable assumption" rule in *Miller, supra,* 75 B.R. at 680–81.

■ Cohen testified, without contradiction, that the use of the Account for payment of non-tax expenses was limited, isolated, and for an arguably legitimate and logically expedient reason. We cannot say that the Debtor's issuance of other payments from the Account makes it unreasonable to assume that deposits for withholding taxes were not deposited in the Account, in addition to deposits to cover the other payments made from the Account. We do not think that a few additional deposits into and payments from the Account were sufficient to poison its status as a legitimate tax trust account. Again, our decision in *AIA II* establishes that the significant issue is not that non-tax payments are made from the Debtor's account, but that the account is the depository of the taxes that are withheld and the source from which tax payments are made. The Account in question appears to meet that definition. Thus, application of the "reasonable assumption" rule diminishes the impact of the principal argument of the Trustee as to why no legitimate "trust fund" exists here.

The most significant fact which the Trustee brings to bear in his favor, but which he subordinates in his briefing, is that the Account had a balance of little more than $1,000.00 on September 1, 1985. This was a date between the time when wages were in fact paid for which far greater sums than $1,000.00 should have been withheld and the date that the pay-

---

**5.** The Trustee accurately quotes our *AIA II* Opinion, 83 B.R. at 329, as stating, in *Rimmer* and *Miller,* that "only where a tax trust fund is actually established by the debtor and the taxing authority is able to trace funds segregated by the debtor in *a trust account established for the purpose of paying taxes* would we conclude that

such funds are not property of the debtor's estate" (emphasis added). Our holding in *AIA II* is, however, a slight retreat from the breadth of this dictum in those cases. *Miller* was vacated after our initial decision in that case and our decision in *Rimmer.*

ments in issue were made. There is some force to the Trustee's contention that the withholding taxes for the July and August bonuses paid to Cohen and the Stelweck brothers were either not deposited when they should have been, i.e., in July and August, or were withdrawn and replaced later, which may destroy the "reasonable assumption" that the Debtor did not disturb the withholding tax deposits even though it used the Account for other purposes. We can, however, conceive of at least two responses to this argument: (1) It was proper to consider the date of payment of the wages as September and October, the date that the payments were recorded on the Debtor's books; or (2) It was proper, as Cohen claims the Debtor's accountant advised, to pay the withholding taxes in installments throughout the balance of 1985.

Unfortunately, the Trustee provides us with no bases to rule out either these or any other responses as legitimate, either with testimony in the record or citations to pertinent statutes and regulations. No evidence was presented that the Debtor was penalized by either taxing authority in any way. Hence, these responses, or others, may have been acceptable to the taxing authorities.[6]

The PA quarterly system creates special additional problems. It does appear that this Debtor placed sufficient funds in the Account prior to the end of the third-quarter payment period to pay all withholding taxes due to PA in that quarter. We must consider the October 28, 1985, mailing date of the third-quarter check, per Cohen's testimony, as the date of payment rather than the November 5, 1985, receipt date in Gordon's records. A taxpayer should not be penalized for a delay attributable to the mail. The only question regarding the third-quarter payment is whether the Debtor's apparent failure to deposit sums in the Account when the wages were paid in July and August was so improper as to destroy the "tax trust." Furthermore, the wages were all paid in the third quarter, and taxes

were not remitted to PA until the fourth quarter, of the year 1985. The fourth-quarter payment in late November, 1985, was early if and only if the withholding had been properly effected in the fourth quarter.

■ Certainly, these observations raise serious questions about the propriety of the Debtor's payments to the taxing authorities. With the right testimonial evidence and/or citations to statutory and regulatory authority, the Trustee may have succeeded in convincing us that the Debtor's improprieties destroyed any potential of a "tax trust." However, our decision in *AIA II* evinces our reluctance to find a preference if taxes are paid by a debtor, when colorably due, from a potentially-legitimate source. In light of the favored status given to taxing authorities by Congress in allowing "tax trusts" to be excluded from property of the estate, we are reluctant to look behind the Debtor's remittances to find improprieties which destroy trust status unless such improprieties are manifested on the record before us. Here, the Trustee failed to make the requisite manifestations, and it is therefore possible that we would have held that the payments in issue were exempted from preferential status as payments from trust funds which were not property of the Debtor's estate in any event.

3. ALTHOUGH THE *AIA II* DECISION OVERCOMES ANY DEFENSES OF THE TAXING AUTHORITIES BASED UPON § 547(c)(2), THE TRUSTEE MAY ALSO HAVE EXPERIENCED SOME DIFFICULTY IN ESTABLISHING THAT THE PAYMENTS IN ISSUE WERE REMITTED ON ACCOUNT OF THE ANTECEDENT DEBTS PURSUANT TO § 547(b)(2) UNDER THE HOLDINGS IN THAT DECISION

Our decision in *AIA II* touched on several other issues relevant to the claims and

---

**6.** *Compare AIA II,* page 624 & n. 7 *infra,* where penalties were actually imposed upon the Debtor.

defenses articulated by the parties in these proceedings. In particular, in *AIA II*, we held that a transferee defending against preference claims on the basis of 11 U.S.C. § 547(c)(2) has the burden of proving both that the transfers were in the ordinary course of dealings between this particular debtor and particular transferee, pursuant to 11 U.S.C. § 547(c)(2)(B), *and* were according to "ordinary business terms" in the industry generally, pursuant to 11 U.S.C. § 547(c)(2)(C). 83 B.R. at 332–33. Our conclusions are helpful to the Trustee here in countering the argument of PA that it has a defense pursuant to § 547(c)(2), and the IRS does not even advance any argument based on § 547(c)(2), apparently in light of this decision. PA presented no direct evidence as to the Debtor's past payment performances, thus failing to meet its burden of proof of the element of § 547(c)(2)(B). We also doubt that the fourth quarterly payment transfer to PA, apparently made totally improperly and illegally on account of wages paid in the third quarter, could be considered "ordinary." We also question whether the Debtor's filing as a quarterly filer when it should have filed as a monthly filer is "ordinary." Therefore, no viable § 547(c)(2) defense appears to exist.

We further held in *AIA II* that § 547(a)(4) established, beyond question, that the date when penalties are imposed upon the debtor as taxpayer is the date when tax payments are due, irrespective of the date when tax returns must be filed. In light of the evidence on the record in *AIA II* on this point, we found that penalties were imposed by the IRS when payment was not made by the debtor there within three business days of the payment of the wages for which the payments were withheld. We therefore accepted the contention of the Trustee there that all wage taxes withheld and not remitted to the IRS

within three days were antecedent debts pursuant to 11 U.S.C. § 547(b)(2).

The record here does not contain any direct evidence that a penalty has been imposed upon the Debtor here as to the federal withholding taxes in issue. Although one of the Trustee's witnesses here was the self-same George Miller who testified at the *AIA II* trial, our review of the transcript here indicates that, here, Miller provided no testimony on that score. Clearly, we cannot incorporate his testimony from *AIA II* into the record here. Nor is other evidence that a penalty was imposed present here, as there was in *AIA II*.[7]

The evidence regarding the imposition of penalties by PA is even skimpier. Miller does not address the point as to when and if penalties were imposed at any time. There is no precedent cited, as in *AIA II* as to the federal withholding taxes, on this point. The Trustee apparently desires us to infer that, since the Debtor should have been a monthly filer instead of a quarterly filer, its quarterly filing would necessarily result in a penalty. However, Gordon denies that any penalty was or would be imposed upon the Debtor for this impropriety. The Debtor has therefore failed to carry his burden on this point by a preponderance of the evidence.

We are aware that one element of the facts here is stronger than in *AIA II*. Here, the bonuses were paid in July and August and the withholding was effected later. This would appear to have resulted in inaccurate and improper returns to the IRS and to PA as to the fourth-quarter return. No such element was present in *AIA II*. However, without more definitive evidence of same, we cannot conclusively find that penalties were chargeable to the Debtor as a result of these improprieties and inaccuracies, and, apparently, no penalties were actually imposed. Hence, it is

---

7. Although not mentioned in the Opinion, our Finding of Fact 6, 83 B.R. at 326, stating that a penalty is imposed if withholding taxes are not paid within three business days was supported by not only Miller's testimony directly addressing the issue of imposition of penalties, but also the testimony of IRS revenue officer Alan D. Zlatkin, *and* IRS records showing that penalties had in fact been actually imposed upon the debtor there. *Compare AIA II*, Finding of Fact 7, *id;*, and *id.* at 331 (excise tax payments not found to be antecedent debts because of absence of evidence as to when and if penalties were imposed for late payments of such taxes).

unclear whether the Trustee here has met his burden of proving that any of the transfers here were on account of antecedent debts, as required by 11 U.S.C. § 547(b)(2).

## D. Conclusion

Successful litigation of preference actions against governmental bodies to avoid payment of taxes is a difficult proposition, which can be accomplished only by a trustee's painstakingly satisfying all of several criteria with evidence of record.[8] The Trustee here came up short in several respects. Therefore, we are compelled to issue an Order entering judgment in favor of the Defendant taxing authorities.

---

**8.** Another defense, not articulated by PA here, may arise from the Eleventh Amendment. *See In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 56–57 (2nd Cir.1988). *But see In re McVey Trucking, Inc.*, 812 F.2d 311, 326–27 (7th Cir.), *cert. denied sub nom. Edgar v. McVey Trucking Co., Inc.*, — U.S. —, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987); *In re Vazquez*, 788 F.2d 130, 132–33 (3d Cir.), *cert. denied sub nom. Vazquez v. Pennsylvania Dep't of Public Welfare*, 479 U.S. 936, 107 S.Ct. 414, 93 L.Ed.2d 365 (1986); and *In re Watts*, 76 B.R. 390, 401–02 (Bankr.E.D.Pa.1987).